DARTHEY I. WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 82076.   Filed April 28, 1961.

*L. C. Dodge, CPA*, and *John Davis Kerr, Esq.*, for the petitioner.
*Wallace M. Wright, Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* The Commissioner determined deficiencies in
income tax for 1956 and 1957 in the amounts of $868.28 and $580.27,
respectively. The sole issue presented for decision is whether
monthly payments received by petitioner pursuant to a compromise
agreement arising out of a will contest, were includible in gross income
when paid entirely out of income from property held by the estate.

Petitioner, Darthey I. Williams, is the remarried widow of
Hugh S. Black. During 1956 and 1957, she resided in Spartanburg,
South Carolina, and filed her individual income tax returns for those
years with the director of internal revenue at Columbia, South
Carolina.

Hugh S. Black, petitioner's deceased husband, died testate on
May 22, 1950, leaving his last will and testament dated February 25,
1950, and codicil dated March 2, 1950. The pertinent provisions of
this will are as follows:

14. I will, devise and bequeath all the rest of my property, real and personal,
legal and equitable, and each and every interest in property to my brother,
Paul Black, upon the following trusts:

(a) To possess, manage, control, lease and dispose of for the purposes set
out herein with power to sell any property, real, and personal, at private sale
in his discretion, to make to purchasers good title in fee simple; and to invest
and re-invest from time to time in his judgment and without the limitations
provided for by statute as to fiduciaries.

(b) To segregate into a separate account, care and management all of my
stock in Investment Realty Company of Spartanburg, S. C., and pay to my wife,
Darthey I. Black, annually or quarterly during her widowhood, (whether
terminated by death or remarriage) one-fourth of the net dividend or income
on the stocks or property of the trust so segregated or Five Hundred ($500.00)
Dollars a month whichever is the larger.

(c) Subject to the direction in the foregoing paragraph to pay net income
in equal shares to my child or children or issue in case any survive me, the
same to be paid to the guardians of such children during minority, and to
yield, turn over and convey to each child its proportionate part of the corpus of
the trust, one-half upon attaining the age of thirty years, and one-half upon
attaining the age of thirty-five years, free and discharged from trust, the child
or children of any deceased child to represent the parent per stirpes.

(d) Subject to the direction in Paragraph (b) and in case I leave no child, children or issue or such child or children as I may leave shall die without leaving issue before attaining the age of thirty-years—to pay one-half of the net income from the trust of my sister, Rosa Black, for and during the term of her natural life and one-half to my brother, Paul Black, for and during the term of his natural life, and after their respective deaths in case my two nieces Marianna Black and Paula Elizabeth Black shall not have attained the age of thirty-three years, to use the income for their benefit, the Trustee exercising his discretion as to how much of the income may be turned over to them during the period from their majority (twenty-one years*) to time for distribution, and to hold the trust intact; upon the respective deaths of Rosa Black and Paul Black or the thirty-third birthday of Paula Black, whichever date is later, the Trustee shall yield, deliver, transfer, and convey the entire trust property, free and discharged from any trusts whatever:

(a) In equal shares to my two nieces, Marianna Black and Paula Elizabeth Black, if both be living at that time.

(b) In equal shares per stirpes to the survivor and the children of either of them, who may have died before that date leaving children.

(c) To the survivor in case either shall have died before that date without leaving children.

(d) To the children of either or both (per stirpes if both) in case both have died, either or both leaving children.

In case there shall be born to my brother, Paul Black, another child or children before the distribution date above provided for this trust, the trust estate shall open up and such other child or children shall participate identically as and in equal shares with Marianna Black and Paula Elizabeth Black, and with all the same limitations, the shares of such younger child or children shall be held by the Trustee until such child or children shall reach the age of thirty-three years, and in case there is no lineal descendants of Paul Black living at the times herein provided for distribution, then to yield, turn over and convey the entire trust property to any other nieces or nephews, and child or children of any deceased nieces and nephews per stirpes.

The will and codicil were admitted to probate by the Probate Court for Spartanburg County in common form on June 1, 1950. Thereafter, on January 15, 1951, petitioner demanded under the appropriate South Carolina statute, that the papers so admitted to probate in common form be proven in due form of law. On April 26, 1951, the probate judge for Spartanburg County entered his order holding that the papers had been executed in the manner required by law, and further holding that no grounds had been shown for invalidating the will and codicil. Subsequently, pursuant to the applicable statutory law of South Carolina, petitioner appealed from the decision of the Probate Court to the Court of Common Pleas for Spartanburg County, stating her grounds of appeal, and served notice of motion to frame issues for trial de novo before a jury, which motion came on for hearing before the resident circuit judge for the seventh judicial circuit. On September 5, 1951, the judge issued his order framing the issues for trial.

The trial was begun before the court and a jury on September 27, 1951. After approximately 2 days of testimony, attorneys for petitioner and for the executor of the will of Hugh S. Black announced in open court that a compromise agreement of disposition of the issues had been reached, subject to the approval of the court. On October 18, 1951, the presiding judge signed and issued his order and decree approving the agreed-upon settlement, which order and decree was duly consented to by all of the possible takers under the will of Hugh S. Black, deceased, and their attorneys, and all who could or would have taken under the statute of descent and distribution of the State of South Carolina had Hugh S. Black died intestate. This compromise agreement provided in part:

2. That the Respondent, Darthey I. Black, is to receive, retain and own and hold as her individual and absolute property the following:

\* \* \* \* \* \* \*

(d) From the trust properties in the Will she is to receive the sum of Two Hundred and Fifty and No/100 ($250.00) Dollars per month for life, without restriction as to remarriage or otherwise, such monthly payments to commence as of October 1st., 1951, and be payable monthly thereafter, but to terminate upon the death of the said Darthey I. Black;

\* \* \* \* \* \* \*

5. \* \* \* that the estate is to retain, and the said Darthey I. Black to have no interest in or claim to, any income or trust funds provided for her by the terms of the Will, whether heretofore accrued or hereafter accruing (except the $250.00 monthly payments hereinabove provided for her); \* \* \*

No appeal was taken by any party from the order and decree entered by the court on October 18, 1951, and the order has become final.

During each of the years 1956 and 1957 petitioner received $3,000 from the estate or the trust resulting from the will and the order and decree entered by the court with respect thereto. According to United States fiduciary tax returns filed in the name of the estate of Hugh S. Black for the years 1956 and 1957, the petitioner was paid $3,000 from the estate in each of those years, all of which was paid out of the income of the estate.

The Commissioner determined that the $3,000 received by petitioner in the years 1956 and 1957 was includible in petitioner's taxable income under the provisions of sections 61 and 102 of the Internal Revenue Code of 1954.[1]

---

[1] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

\* \* \* \* \* \* \*

(15) Income from an interest in an estate or trust
SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

In refutation of this determination petitioner argues that she remarried prior to 1956 and under the provisions of the will of her deceased husband, the monthly payments provided therein would have terminated and it cannot, therefore, be logically argued that the payments received in 1956 and 1957 were made pursuant to the will. Continuing she submits that under the terms of the compromise settlement, as approved by the court decree, the monthly payments were paid to her by the beneficiaries of the trust as a part consideration for the relinquishment by petitioner of all other rights she may have had either against the estate or the trust created in the will and concludes that they represent deferred installment payments for the relinquishment of her rights and do not constitute payments to her as an heir at law.

Although the Commissioner does not claim that the payments were made in accordance with the terms of the will, he does contend in support of his determination, that no distinction can be drawn between the receipt of payments under the will and petitioner's receipt of payments pursuant to the agreed-upon settlement of her suit contesting the will. Thus petitioner's receipts must be treated as an inheritance, specifically provided for in section 102, I.R.C. 1954.

The treatment of property for tax purposes when received from the estate of a decedent in compromise of a claim by an heir was the question presented to the Supreme Court in *Lyeth* v. *Hoey*, 305 U.S. 188 (1938). In *Lyeth* the taxpayer and other heirs raised objections to the will when it was offered for probate upon the grounds among others of lack of testamentary capacity and undue influence. Issues were framed, however before the trial had begun a compromise agreement was entered into by the parties and subsequently approved by the Probate Court. The Court held that the—

Petitioner was concededly an heir * * *. It was by virtue of that heirship that he opposed probate of her alleged will which constituted an obstacle to the enforcement of his right. Save as heir he had no standing. Seeking to remove that obstacle, he asserted that the will was invalid because of want of testamentary capacity and undue influence. In accordance with local practice, he asked the probate court to frame these issues for a jury trial. * * * It was in that situation, facing a trial of the issue of the validity of the will, that

(b) INCOME.—Subsection (a) shall not exclude from gross income—
    (1) the income from any property referred to in subsection (a) ; or
    (2) where the gift, bequest, devise, or inheritance is of income from property, the amount of such income.
Where, under the terms of the gift, bequest, devise, or inheritance, the payment, crediting, or distribution thereof is to be made at intervals, then, to the extent that it is paid or credited or to be distributed out of income from property, it shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property. Any amount included in the gross income of a beneficiary under subchapter J shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property.

the compromise was made by which the heirs, including the petitioner, were to receive certain portions of the decedent's estate.

There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. * * * While the will was admitted to probate, the decree also required the distribution of the estate in accordance with the compromise and, so far as the latter provided for distribution to the heirs, it overrode the will. So far as the will became effective under the agreement it was because of the heirs' consent and release and in consideration of the distribution they received by reason of their being heirs. * * * The portion of the decedent's property which petitioner obtained under the compromise did not come to him through the testator's will. That portion he obtained because of his heirship and to that extent he took in spite of the will and as in case of intestacy. * * *

* * * He was heir in fact. Whether he would receive any property in that capacity depended upon the validity of his ancestor's will and the extent to which it would dispose of his ancestor's estate. When, by compromise and the decree enforcing it, that disposition was limited, what he got from the estate came to him because he was heir, the compromise serving to remove pro tanto the impediment to his inheritance. * * *

In the instant case petitioner was also an heir and this afforded her standing to challenge the probate of the will. Issues were framed and the trial before a jury commenced. Before decision a compromise agreement was entered into by the parties and was approved by court decree. We are unable to distinguish the case before us from *Lyeth.* We think that "there is no question that petitioner obtained that portion, upon the value of which [she] is sought to be taxed, because of [her] standing as an heir and of [her] claim in that capacity," and under the authority of *Lyeth* the amounts received should be treated as if they were acquired by inheritance.

Petitioner contends *Lyeth* is not applicable in this situation as the monthly payments made to her were, in no sense, paid to her as an heir at law as in the case of intestacy, because the South Carolina statute of descent and distribution makes no provision for installment payments either from principal or income to heirs at law. The principle laid down in *Lyeth* that the property received is to be treated as if it were acquired by inheritance spells out the Federal tax consequences of such a compromise agreement irrespective of State law characterization. *Burnet* v. *Harmel,* 287 U.S. 103 (1932). The tax treatment of monthly payments from income under a compromise agreement was the issue to be decided in *Harte* v. *United States,* 252 F. 2d 259 (C.A. 2, 1958). In reaching their decision that the amounts should properly be included in gross income, the court said at page 261 :

Of course, the payments received by appellant were not received by bequest * * * under his will, or by distribution under the laws of intestacy. However, since Lyeth v. Hoey, * * * money received by an heir in settlement of a will contest is to be treated as if it were acquired by inheritance. * * *

It should be noted that in *Harte* the court found it unnecessary to pass upon respondent's argument that since it was undisputed that the

payments were made from income they were taxable, irrespective of any claims that the settlement agreement intended that the monthly payments were to have been paid out of corpus because the court found that "the entire agreement reflect[ed] an understanding that the primary interest of the [taxpayer] in the trust fund [was] in the income arising therefrom." In an attempt to distinguish *Harte* petitioner says that the payment to her out of income was the unilateral act of the executor as no reference was made in the agreement to income and the payments are not restricted in any sense as to their source other than "from the trust properties" referred to in the will. Petitioner claims further that if such payments were paid out of income the tax due thereon is legally assessable against the beneficiaries of the trust. She maintains that since the will leaves all the income of the trust to other beneficiaries of the estate and leaves nothing to petitioner for the years under review, all the income is due other beneficiaries. Further, the fact that these beneficiaries decided to disclaim their rights in order to compromise a contest of the will does not change their liability as the recipients of the income. In support of this proposition petitioner cites *Lydia Hopkins*, 13 T.C. 952 (1949).

In that case we held that annual payments from the income of a trust were not received through inheritance and did not constitute income from property under section 22(b)(3), I.R.C. 1939, which was substantially reenacted as section 102, I.R.C. 1954. However, we reached that result on entirely different facts from *Lyeth* and those presented in this case and we do not think it is applicable to the situation here. In *Lydia Hopkins* we distinguished the facts and holding in *Lyeth*, saying at page 966 that—

In the *Lyeth* case the thing that was acquired by the taxpayer heir through inheritance by reason of the compromise settlement agreement and which justified the application of section 22(b)(3) was a portion of the corpus of decedent's estate; that is to say, a portion of the property owned by the decedent at the time of his death. Here, Lydia Hopkins, by reason of the compromise settlement agreement with her mother, acquired no portion of the corpus of her father's estate; nor did she acquire the $24,000 as income from any portion of that corpus. She acquired the $24,000 as income from property constituting the corpus of the trust, which property when it was transferred to the trust was the separate individual property of her mother, Mary K. Hopkins, none of which property Mary K. Hopkins had received from property owned by her husband at the time of his death or as income from such property.

Do these differences in the facts here and those in the *Lyeth* case render the rule in the latter case inapplicable here in applying section 22(b)(3)? We think they do.

Although we think it is implicit in the compromise agreement that the monthly payments were to be made out of income from the proviso which states:

that the estate is to retain, and the said Darthey I. Black to have no interest in or claim to, any income or trust funds provided for her by the terms of

the Will, whether heretofore accrued or hereafter accruing (except the $250.00 monthly payments hereinabove provided for her) ;

we are not constrained to rest our decision solely upon this basis as the court did in *Harte*. In the instant case the payments were received through inheritance and were in fact made out of trust income at monthly intervals. A review of the cases, *Alice M. Townsend*, 12 T.C. 692 (1949), affd. 181 F. 2d 502 (C.A. 6, 1950) ; *Raye E. Copeland*, 12 T.C. 1020 (1949) ; *Mary R. Milleg*, 19 T.C. 395 (1952) ; *Ruth B. Kaiser*, 18 T.C. 808 (1952), discloses that such payments should have been included in gross income under the precise language of section 102(b).

*Decision will be entered for the respondent.*