## TREE et ux. v. UNITED STATES.
### No. 45025.

Court of Claims.

June 5, 1944.

Allen H. Gardner, of Washington, D. C. (Morris, KixMiller & Baar, of Washington, D. C., on the brief), for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Mrs. Tree, then Nancy Perkins, married Henry Field, February 7, 1917. He died on July 8 of that year. He and his elder brother, Marshall Field III, were grandsons of Marshall Field who had died on January 16, 1906, leaving a will which, in its twentieth article, gave the residue of his estate to trustees for the benefit of the two grandsons. The details of the trust disposition are shown in findings 4, 5, 6, and 7.

The corpus of Henry Field's share under the will of his grandfather, as well as a considerable part of the income from it, was to be turned over to him in stated amounts as he reached specified ages. If he died without issue, as he did, the share with its accumulations was to go to his brother Marshall. In litigation in the Superior Court of Cook County, Illinois, as to the duties of the trustees and the rights of Marshall Field III, after the death of Henry, Henry's widow, then Nancy Perkins Field, filed a pleading claiming dower in Henry's share of the real property which had been held by the trustees during the time that she was Henry's wife.

Since Henry's equitable ownership was defeasible upon his death without issue before the property was distributed to him, the question whether his widow was entitled to dower against Marshall, to whom the property was given over by the will, was a controversial one. See Restatement, Property, Section 54 and appendix to volume 1. The question was compromised by an agreement between Marshall and Henry's widow who had, on May 4, 1920, married Ronald L. Tree. As a result of this compromise, the court, with the con-

sent of Marshall and Mrs. Tree, decreed that, as against Marshall and those claiming through or under him, Mrs. Tree should have dower in Henry Field's share of the residuary estate, payable out of the income of the estate, but that any other person interested or who might become interested in the estate, would be free to contest Mrs. Tree's claim of dower.

As shown in findings 11 and 13, a written agreement made by Marshall and Mrs. Tree before the entry of the decree, but dated the day after, directed the trustees that the amount payable to Mrs. Tree for her dower should be $75,000 per year for her life. Another agreement was made on May 24, 1921, which directed the trustees to pay Mrs. Tree the full amount of her dower for the year 1920, that is, one-third of the income from Henry's share of the real estate, and for 1921 and thereafter $85,000 per year, which she agreed to accept in full satisfaction of her dower rights. The amount of her dower for the period March 29 to December 31, 1920, before deduction of federal income tax paid by the trustees was $226,776.78.

We construe the agreement between Marshall Field and Mrs. Tree as a surrender by Mrs. Tree, for the years after 1920, of any claim to more than $85,000 per year out of the income of Henry's share of the real estate, no matter how large that income might be; and as a personal guaranty on the part of Marshall that Mrs. Tree would be paid the $85,000 per year even if the income received by the trustees from Henry's share was not sufficient to enable them to pay that much.

For the years 1921 through 1931, the $85,000 per year was paid to Mrs. Tree. For the years 1927 and 1928 Mrs. Tree included the payments made in those years in her income tax returns and paid taxes accordingly. The Commissioner of Internal Revenue advised her that the payments were not taxable to her and suggested that she file claims for refund. She did so in 1931 and, the refund not having been made, she sued in this court and obtained a compromise administrative settlement for seventy-five percent of the claims. Upon a similar claim for refund of the 1929 tax, a full refund was made. However, for the years 1930 and 1931, the $85,000 not having been included in the plaintiffs' returns for those years, the Commissioner issued deficiency notices for those years and assessed and collected taxes, with interest, on the $85,000 received in each of those years.

Assuming that proper claims for refund were made, and that the present suit is timely brought, we reach the substantial question in the case, whether these annual payments by the trustees to Mrs. Tree were, in the circumstances, income taxable to her.

The plaintiffs concede that dower, that is, one-third of the income of the deceased husband's real estate, is income taxable to the widow. But they contend that what Mrs. Tree received was not dower, but an amount much less than dower would have been, which was the price at which she sold her dower to Marshall Field III who owned the property subject to her dower. They urge that she thereby, by the compromise, took the status of one who received an inheritance, payable in installments, rather than a portion of the income of the trust. They point to the fact, which we have found to be a fact, that Marshall Field III agreed to make up any deficit if the income in the hands of the trustees was not sufficient to pay the $85,000, as proof that the amount received was not dependent upon income, and therefore was not income.

In Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, an heir, left out of a will, contested the will on the ground that the testator was incompetent and was unduly influenced. The contest was compromised, and the contestant received a share, apparently considerably less than he would have received if the will had been overthrown. It was held that what he received was an inheritance, and was not taxable as income; that the contestant was in fact an heir and that the theory of his contest was his right to inherit. The reasoning of that decision seems to us to characterize the payments to Mrs. Tree as dower. She was Henry Field's widow, she claimed dower in the real estate in which he had had an interest, and, her claim being doubtful and contested, she compromised for less than she would probably have received if her claim had been clear and uncontested. We do not see why the part which she compromised for, to be paid to her as dower would have been paid, is not dower for tax purposes.

So far as the trustees were concerned, the directions to them given by the court's

decree and the agreement between Mrs. Tree and Marshall Field III, gave their payments the character of "income * * * which is to be distributed currently by the fiduciary to the beneficiaries," and hence not taxable to the trustees under section 162(b) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, § 162(b). The Board of Tax Appeals so held in Continental Illinois National Bank & Trust Co. et al. v. Commissioner, 40 B.T.A. 25. But section 162(b) says that if the trustees may deduct the payment from the trust income, "the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries." We understand the plaintiffs' contention to be that, for this purpose, Marshall Field III, and not Mrs. Tree, was the beneficiary; that the income of Henry's share, as income, was Marshall's, and that the trustees were merely his agents in paying it to Mrs. Tree pursuant to his promise.

Analyzed in this way, we should think that the consent decree and the agreement would amount to an assignment by Marshall Field to Mrs. Tree of a portion of the income of the real estate which Henry had owned. As such, it would not be taxable to Marshall, the assignor, but to Mrs. Tree, the assignee, who owned the interest for her life and received the income. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Commissioner v. Field, 2 Cir., 42 F.2d 820.

We now consider the effect of Marshall Field's agreement to make up any deficit if the income in the hands of the trustees was not sufficient to pay the $85,000. We see no reason why this additional promise, made as a term of the compromise, should have changed the nature of Mrs. Tree's interest from that of either dowress or assignee to some other kind of interest, the current receipts from which were not taxable income. If one should sell a piece of income-producing property to another, and, as an inducement to the purchase, should guarantee that the purchaser would receive at least a specified income from it, we suppose that such income as the purchaser did receive would be taxable as income, whether payments made by the seller on the guaranty were or not. The fact of Marshall Field's additional promise did not convert Mrs. Tree's whole interest into a mere promissory one. She was, under the court's decree, the owner of an interest in income-producing property, and of a right to receive that income up to the agreed amount. If Marshall Field III had lost his property and become unable to pay his guaranty, if necessary, she would still have received her income, just as she did receive it, so long as the property in the hands of the trustees produced it.

We conclude therefore, that the payments to Mrs. Tree were taxable, and that her payments are not refundable. It is, therefore, not necessary to consider the question of the adequacy of the claim for refund for the year 1930.

According to the stipulation of the parties, Ronald L. Tree was entitled to, and was denied, a deduction for a capital net loss of $63,096.46 sustained during the year 1931. His claim for refund was adequate and this suit is timely to recover that overpayment. The plaintiffs are entitled to recover. Entry of judgment may await the stipulation of the parties as to the amount of the judgment.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.