JAMES F. EDWARDS AND JOAN C. EDWARDS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTHER S. EDWARDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83598, 86533. Filed March 19, 1962.

*Robert K. Emerson, Esq.,* for the petitioners in Docket No. 83598.
*Elliott E. Meyers, Esq.,* for the petitioner in Docket No. 86533.
*Conley G. Wilkerson, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in income tax against petitioners in Docket No. 83598 for the calendar years 1953, 1954, and 1955 and an addition to tax for the year 1953 as follows:

| Year | Deficiency | Addition to tax, sec. 294(d)(1)(A), I.R.C. 1939 |
|---|---|---|
| 1953 | $11,336.72 | $1,278.59 |
| 1954 | 121.70 | |
| 1955 | 2,599.69 | |
| | 14,058.11 | 1,278.59 |

Certain adjustments have been conceded by these petitioners.

Respondent has determined deficiencies in income tax against petitioner in Docket No. 86533 for the calendar years 1951 to 1955, inclusive, and additions thereto as follows:

| Year | Deficiency | Additions to tax | | |
|---|---|---|---|---|
| | | Sec. 291(a), I.R.C. 1939 | Sec. 6651(a), I.R.C. 1954 | Sec. 294 (d) (1) (A), I.R.C. 1939 |
| 1951 | $339.00 | $84.75 | | $30.53 |
| 1952 | 1,133.97 | 283.49 | | 102.06 |
| 1953 | 1,438.80 | 359.70 | | 129.49 |
| 1954 | 1,187.32 | | $296.83 | 109.82 |
| 1955 | 1,044.49 | | 261.12 | |
| | 5,143.58 | 727.94 | 557.95 | 371.90 |

Because of the interrelationship of the issues the cases were consolidated for trial.

The issues remaining for our consideration are:

(1) Whether certain payments by the C. F. Edwards Trust to Esther S. Edwards constitute taxable income to her and/or James F. Edwards.

(2) Whether a payment to Elliott E. Meyers by the C. F. Edwards Trust constitutes income to Esther S. Edwards and/or James F. Edwards.

(3) Whether certain payments of insurance premiums by the C. F. Edwards Trust constitute income to James F. Edwards.

(4) Whether the additions to tax as determined were proper.

### FINDINGS OF FACT.

Petitioners, in Docket No. 83598, James F. Edwards (hereinafter referred to as James) and Joan C. Edwards, are husband and wife residing in Huntington, West Virginia. They filed income tax returns for the taxable years 1953, 1954, and 1955 with the district direc-

tor of internal revenue at Parkersburg, West Virginia. Some facts have been stipulated to by petitioners in either or both dockets and are so found.

Petitioner in Docket No. 86533, Esther S. Edwards (hereinafter referred to as Esther), is an individual residing in Chesapeake, Ohio. She filed no Federal income tax returns for the years 1951 through 1955.

On May 27, 1944, C. F. Edwards, the husband of Esther and father of James (by a prior marriage), executed an inter vivos trust instrument providing in pertinent part as follows:

THIS TRUST AGREEMENT, made this 27th day of May, 1944, by *C. F. EDWARDS* of Chesapeake, Ohio, party of the first part, hereinafter called Donor, and *JAMES F. EDWARDS* of Huntington, West Virginia, party of the second part, hereinafter called Trustee, which designation shall also include any and all additional trustees and successor trustees hereunder,

\*        \*        \*        \*        \*        \*        \*

*ARTICLE I. DURATION OF TRUST.*

The trust hereby created shall continue until the death of the survivor of Donor and said James F. Edwards.

*ARTICLE II. DISTRIBUTION OF TRUST ESTATE AND UNDISTRIBUTED INCOME, IF ANY, AT END OF TRUST.*

At the termination of [this] trust * * *, trust estate * * * shall be paid and distributed in equal shares to the children of said James F. Edwards; * * *

*ARTICLE III. DISTRIBUTION OF INCOME FROM TRUST ESTATE DURING CONTINUANCE OF TRUST.*

Out of the income from the trust estate Trustee shall first pay all of the necessary costs and expenses of the trust, including outlays necessary for the protection, management and upkeep of the trust estate, repairs, alterations and improvements, interest on encumbrances, taxes and assessments of all kinds, insurance, care and maintenance of the trust estate, and compensation of Trustee, his attorneys, agents and employees, as hereinafter provided. All of the remainder of the income from the trust estate, hereinafter sometimes called "net income", shall be paid to Donor so long as he shall live. If Donor shall predecease said James F. Edwards and the trust shall, therefore, continue after the death of Donor, then, from the death of Donor and until the end of the trust, Trustee shall pay from the net income, the sum of Ten Dollars ($10) per year to each of the living children of said James F. Edwards, and he shall pay all of the remainder of the net income to said James F. Edwards in his individual capacity.

*ARTICLE IV. POWERS AND DUTIES OF TRUSTEE.*

Trustee shall, in addition to the powers incident to the office of trustee, have, and may exercise, the following powers, privileges and discretions with respect to the trust hereby created:

(a) * * * Trustee shall have absolute discretion as to the terms, conditions and rate of interest with respect to investments, with the right to vary and transpose the same into other investments as the Trustee may deem advisable for the best interests of the trust estate. * * *

\*        \*        \*        \*        \*        \*        \*

(h) To join in, maintain, compromise, defend or otherwise dispose of, any litigation in any manner arising in connection with the trust property, upon such terms as Trustee shall deem advisable; to settle or compromise any claim for or against this trust; and, in the exercise of the foregoing powers, to execute any and all releases, receipts or instruments necessary or advisable.

\*　　\*　　\*　　\*　　\*　　\*　　\*

### ARTICLE V. MISCELLANEOUS PROVISIONS.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(j) No beneficiary hereunder may, by way of anticipation, dispose of, charge or encumber any net income of the trust, and any attempted disposition, charge or encumbrance thereof shall be invalid and of no legal effect, and shall not be in any wise regarded by Trustee, nor shall such net income, or any part thereof, be in any wise liable to any claim of any creditor of any such beneficiary, it being understood that the beneficial interest in accumulated net income shall not be determined or vested until the date of the payment thereof.

(k) The trust hereby created is irrevocable.

C. F. Edwards died testate on April 17, 1950, a resident of Lawrence County, Ohio, survived by his wife Esther, his son James, and a daughter Helen Edwards Bradley. His will was duly probated in the Probate Court of Lawrence County, Ohio, and James qualified as executor. Pertinent parts of said will are as follows:

*ARTICLE I.* I direct that all lawful federal and state taxes owing by me or by my estate, including estate and inheritance taxes, and all my just debts, including funeral expenses, shall be paid out of assets belonging to me at the time of my death, and shall not be paid out of any property transferred by me during my life by way of sale or gift.

\*　　\*　　\*　　\*　　\*　　\*　　\*

*ARTICLE IX.* If my wife, Esther Sibley Edwards, shall not be living at the time of my death, then I give, devise and bequeath all of the remainder of my estate of every kind and character whatsoever and wheresoever the same may be situate, including lapsed bequests and devises, to my grandson, Charles Frederick Edwards II, absolutely and in fee simple.

*ARTICLE X.* If my said wife, Esther Sibley Edwards, shall survive me, the provisions of Article IX shall be of no effect, and in this event, I give, devise and bequeath all of the remainder of my estate of every kind and character whatsoever, and wheresoever the same may be situate, including lapsed bequests and devises, to my son, James Frederick Edwards, as trustee upon the uses and trusts and for the following purposes, that is to say:

(a) To hold, manage and invest the same \* \* \*.

(b) During the continuance of the trust hereby created my Trustee shall pay from the net income of the trust estate as far as possible, but from the principal thereof whenever the net income is not sufficient, the following:

(1) To my mother, Mary Edwards of Lawrence County, Ohio, the sum of Fifty Dollars ($50.00) per month during the remainder of her life or until the sooner termination of this trust.

(2) To my daughter, Helen Edwards Bradley, the sum of One Hundred Dollars ($100.00) each six (6) months during the remainder of her life or until the sooner termination of this trust.

(3) To my wife, Esther Sibley Edwards, the sum of Three Hundred Fifty Dollars ($350.00) per month until the termination of this trust.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) Whenever, during the continuance of this trust, the annual net income from the trust estate shall exceed the amount necessary to make the payments hereinabove provided for in Section (b) of this Article X, such excess shall be paid to my wife, Esther Sibley Edwards, up to but not in excess of the sum of Two Thousand Five Hundred Dollars ($2,500.00) per year, and this shall be in addition to the monthly payments to be made to her as hereinabove in Subparagraph (3) of Section (b) provided. Any further excess of annual net income shall be added to the principal of the trust estate. * * *

(d) This trust shall end upon the death or remarriage of my said wife, Esther Sibley Edwards * * *.

\* \* \* \* \* \* \*

ARTICLE XI. The provisions hereinabove made for my said wife are in lieu of dower and any other distributive share of my estate which she might claim as my widow. * * *

On July 20, 1950, the executor filed an inventory of the assets of the estate of C. F. Edwards in said Probate Court. The appraised value of such assets was reported as being $78,432.09. On August 2, 1950, Esther filed exceptions to this inventory alleging that assets had been omitted, and disputing the inclusion of certain household items.

Esther objected to the exclusion of the trust assets from the estate, and threatened suit against the trust to establish those assets as being part of the estate. Negotiations were entered into, and a letter dated July 25, 1951, was sent to Esther's attorney, which letter read as follows:

Dear Mr. Meyers:

On behalf of your client, Mrs. Esther Sibley Edwards, you have asserted certain claims against the Estate of Charles Frederick Edwards, deceased, and against a trust created by him by a Trust Agreement dated May 27, 1944, and made by him to James Frederick Edwards, Trustee, copy of which is in your possession.

As counsel for Mr. James Frederick Edwards, who is life beneficiary of the above mentioned trust, we are authorized to make your client the following compromise offer of settlement.

1. Mr. Edwards will pay to Mrs. Edwards, in cash, a sum equal to $350.00 per month from the date of the death of Mr. C. F. Edwards, to the date the settlement is effected.

2. Beginning with the date the settlement is effected, Mr. Edwards will pay to Mrs. Edwards the sum of $500.00 per month for a period of five years and thereafter $350.00 per month. The monthly payments mentioned in this paragraph will cease upon the death or remarriage of Mrs. Edwards.

\* \* \* \* \* \* \*

4. A proper court order will be entered, setting forth Mrs. Edwards' claim against the trust, etc., and that such claim has been compromised and settled, and the necessary portions of the settlement agreement, and ordering and directing the Trustee of the C. F. Edwards Trust, mentioned above, to make the monthly payments, also mentioned above, to Mrs. Edwards from the income of the trust.

5. Since the trust will end with the death of Mr. J. F. Edwards and the trust estate will then go to other persons, Mr. Edwards will take care of the eventuality of his dying before Mrs. Edwards by a proper assignment of a policy of

insurance on his life in the principal amount of $25,000.00, with provision that in the event of his dying before Mrs. Edwards the proceeds of the insurance policy will be used to make the monthly payments agreed to be made under the terms of the settlement agreement until all of such payments are made, or until the proceeds of the insurance policy are exhausted. The assignment of the policy will further provide that if Mrs. Edwards dies first, the policy will be freed from the assignment, and if he dies first and she dies before all of the policy is used up, the remainder will go to Mr. J. F. Edwards' children.

6. Mr. Edwards will pay to you the sum of $1,000.00, which you will accept as a credit on the fee you are to charge Mrs. Edwards.

7. The cash payment to be made as provided in paragraph 1 above will be credited with money actually advanced by Mr. J. F. Edwards to Mrs. Esther Sibley Edwards since the date of the death of Charles Frederick Edwards, as shown by cancelled checks made by J. F. Edwards to Mrs. Esther Sibley Edwards.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

9. Mrs. Edwards will assign to Mr. J. F. Edwards any and all interest she may have in the C. F. Edwards Estate except as hereinafter in paragraph 11 provided.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

13. Mrs. Esther Sibley Edwards will further agree that at this date she has no claim against James P. [sic] Edwards, individually except as set forth in this letter, or against National Mattress Company, or any of its subsidiaries.

If this offer is satisfactory to your client, please have her indicate her approval of it on the bottom of this letter and return it to us. If and when this is done, Mr. Edwards will then be at liberty to make her a payment on the amounts due. If thus signed by Mrs. Edwards, we will regard the contract as effective August 1, 1951, and at your convenience and my convenience, we will reduce the contract to a more formal writing in the near future. If for any reason we are unable to agree on the precise terms of a more formal contract, this letter will constitute the contract between our clients.

　　　Very truly yours,
SSM : ms　　　　　　　　　　　　　　　　　　　(s)　S. S. McNeer
Approved :
　　　(s)　James F. Edwards.
Accepted and approved this 27th day of July, 1951.
　　　(s)　Esther Sibley Edwards.

These negotiations culminated in a written agreement dated as of August 1, 1951, which provided in part:

THIS AGREEMENT, made as of August 1, 1951, by *ESTHER SIBLEY EDWARDS*, party of the first part, hereinafter called First Party, *JAMES F. EDWARDS*, *Trustee of the C. F. Edwards Trust*, party of the second part, hereinafter called Trustee, and *JAMES F. EDWARDS*, in his own right, party of the third part, hereinafter called Third Party.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

WHEREAS, the stocks transferred and assigned by said C. F. Edwards to said James F. Edwards, Trustee, which became the corpus of the trust estate created by said trust agreement of May 27, 1944, constituted the major portion of the estate of said C. F. Edwards, and shortly after the death of said C. F. Edwards First Party employed counsel for the purpose of renouncing the provisions made for her in the will of said C. F. Edwards and instituting a suit to set aside said trust to the extent of enabling her to claim and obtain as the widow of said C. F. Edwards the same share of the trust assets as she would have had if said

trust had not been created, and First Party was advised by counsel that under the applicable laws it was highly probable that said trust would be set aside insofar as her rights as the widow of said C. F. Edwards, deceased, were concerned, and that she would receive a widow's portion of the assets of said trust; and

\* \* \* \* \* \* \*

Now, THEREFORE, WITNESSETH that, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties hereto do hereby covenant and agree as follows:

1. Trustee covenants and agrees to pay to First Party from the income of the C. F. Edwards Trust, in cash, a sum equal to Three Hundred Fifty Dollars ($350.00) per month from the date of the death of C. F. Edwards to the date of this present agreement, less the amount of money advanced and paid to First Party by Trustee or Third Party since the date of the death of C. F. Edwards.

2. Beginning with the date of this present agreement and continuing for a period of five (5) years, or until the death or remarriage of First Party if such death or remarriage shall occur within said five (5) year period, Trustee will pay to First Party from the income of the C. F. Edwards Trust the sum of Five Hundred Dollars ($500.00) per month; \* \* \*

3. If at the end of five (5) years from the date of this present agreement First Party is living and has not remarried, said Trustee shall thereafter pay to her from the income of the C. F. Edwards Trust the sum of Three Hundred Fifty Dollars ($350.00) per month until the death or remarriage of First Party.

4. Since the C. F. Edwards Trust will end with the death of Third Party and the trust estate will then pass to other persons, Trustee covenants and agrees to obtain a policy of insurance on the life of Third Party in the principal amount of Twenty-five Thousand Dollars ($25,000.00), with the provision in said policy, which shall be irrevocable prior to the death or remarriage of First Party, that in the event of the death of Third Party before the death or remarriage of First Party the proceeds of said policy of insurance will be used to make the monthly payments agreed to be made to First Party as hereinabove provided in paragraphs 2 and 3 until the exhaustion of such policy, if required; but if First Party shall die or remarry before the proceeds of such policy are exhausted, or if First Party shall die or remarry prior to the death of Third Party, then the proceeds of such policy or any unused remainder thereof shall go to the same persons who are the ultimate beneficiaries of the C. F. Edwards Trust. Trustee shall pay from the income of said trust all premiums falling due under said policy and keep said policy in full force and effect, free from indebtedness. Trustee shall be permitted to retain physical possession of said policy unless First Party shall, in writing, request Third Party to deposit said policy for safe-keeping with a bank or trust company, in which event said policy, together with a copy of this agreement, shall be deposited with Huntington Trust & Savings Bank, Huntington, West Virginia, for safe-keeping.

5. Third Party, as the person entitled to receive all of the net income from the C. F. Edwards Trust under the terms and provisions thereof, hereby sells, assigns, and transfers unto First Party, to the extent and subject to the limitations and provisions set forth in paragraphs 1, 2, 3, and 4 above, so much of the income of the C. F. Edwards Trust as will enable Trustee to make said payments to First Party from the income of said trust and to enable Trustee to pay the premiums falling due on the above mentioned insurance policy. It is understood by the parties hereto that neither Trustee nor Third Party has the right to assign or transfer or subject any portion of the corpus of said trust to the payments to be made to First Party or for her benefit as hereinabove provided, and that such payments shall be made only from the income of said

trust. However, Third Party guarantees unto First Party that the income from said trust will at all times during the life of the trust be sufficient to make such payments to or for the benefit of First Party, and agrees that if at any time or from time to time the net income from said trust is insufficient for said purpose he will individually make up any deficit and pay the same to First Party or for her benefit as hereinabove provided.

\* \* \* \* \* \* \*

7. First Party hereby releases, relinquishes, and forever surrenders unto Trustee any and all claims she now has or may hereafter have by reason of her relationship to said O. F. Edwards or by reason of any other matter or thing whatsoever which has happened or occurred on or prior to the date of this present agreement in said O. F. Edwards Trust and all assets, property, and estate belonging to said Trust, and also she does hereby assign and transfer unto Trustee any and all right, title, or interest she now has in the estate of said O. F. Edwards, deceased, except as hereinabove otherwise expressly provided. First party further agrees, upon request of Trustee, to execute a formal assignment to Trustee suitable for filing in the Probate Court of Lawrence County, Ohio, of all of her right, title, and interest in the estate of said C. F. Edwards, deceased.

\* \* \* \* \* \* \*

10. First Party has been represented by Elliott E. Meyers, an attorney of Ironton, Ohio, in endeavoring to establish herself as the lawful widow of C. F. Edwards and in asserting her claims with respect to the estate of said C. F. Edwards and with respect to said C. F. Edwards Trust, and, if he has not already done so prior to the execution and delivery of this agreement, Trustee will pay to said Meyers the sum of One Thousand Dollars ($1,000.00) on account of the fee said Meyers may charge First Party for his services. \* \* \*

11. This agreement is in full settlement of all matters between First Party and Trustee and said trust estate and between First Party and Third Party, and First Party now stipulates and agrees that all of her claims against said Trustee, or said trust estate, or with respect to said trust estate, are hereby compromised and settled, and that she has no claim against said Trustee or Third Party except as hereinabove set forth in this agreement \* \* \*.

IN WITNESS WHEREOF, the parties hereto have signed their names and affixed their seals as of the day and date first above written, this agreement being thus executed in triplicate originals.

| Witnesses to signatures of | /s/ Esther Sibley Edwards (SEAL) |
| parties to this agreement: | /s/ James F. Edwards (SEAL) |
| /s/ Sara W. Wilson | *Trustee of the C. F. Edwards Trust* |
| /s/ Joan C. Edwards | /s/ James F. Edwards (SEAL) |

This agreement has been effectuated and the payments to Esther have been made by James as trustee from income of the trust. In 1953 Elliott E. Meyers was paid $1,037.57 out of the trust income. Esther assigned her interest in the Estate of C. F. Edwards, Deceased, to "James F. Edwards, Trustee of the C. F. Edwards Trust" on December 1, 1953.

On March 7, 1952, Esther elected to take her statutory share in lieu of her distributive share under the will of C. F. Edwards.

In computing both the Ohio inheritance tax and the Federal estate tax, the trust res was treated as an asset of the estate. For both pur-

poses the value of the trust assets was determined to be $367,575.32 and the gross estate was valued at $443,594.15. The reported liabilities of the estate varied slightly, but both determinations found that liabilities substantially exceeded the assets of the estate exclusive of the trust assets. The estate was therefore insolvent.

The trust paid the Ohio inheritance tax upon the estate, although that tax is imposed upon the recipients of inheritances, and although James personally owed most of the amount due. The trust also advanced money to the estate out of trust income to pay a portion of the estate tax.

During the years 1951 through 1955 the trustee paid to Esther out of trust income, pursuant to the agreement of August 1, 1951, the sums of $2,500, $5,869.62, $6,000, $6,595.37, and $5,985.02,[1] respectively. The trust deducted such amounts in arriving at distributable net income. Neither James nor Esther reported such amounts in his or her income. The trust also deducted the payment of $1,037.57 paid pursuant to the above agreement in 1953 to Elliott E. Meyers, attorney for Esther. None of the petitioners included this sum in income. Respondent therefore determined that the above amounts were both income to Esther and also income required to be currently distributable to James.

Pursuant to provision 4 of the August 1, 1951, agreement, the trustee made insurance premium payments out of trust income to the John Hancock Mutual Life Insurance Company in the amounts of $2,882.50 and $1,441.25 in 1953 and 1954, respectively. Respondent has determined that these sums were also improperly deducted by the trust in determining the income distributable to James, and has included them in his income for those years.

The trust reported the following amounts of income as distributable to beneficiaries, which amounts do not include the actual payments to Esther:

| Year | Amount distributable to beneficiaries | Capital gain |
| --- | --- | --- |
| 1953 | $26,378.71 | $348.42 |
| 1954 | 45,541.85 | (877.60) |
| 1955 | 24,042.80 | 92,567.52 |

At the time of trial the value of the corpus exceeded $1 million.

The failure of James and Joan to file a declaration of estimated tax for the taxable year 1953 was not due to reasonable cause.

The failure of Esther to file a declaration of estimated tax for the years 1951 to 1954, inclusive, and her failure to file a return in each year involved herein, were not due to reasonable cause.

---

[1] The deviations in amount have not been explained.

## OPINION.

James contends that the monthly payments were taxable to his step-mother and are specifically not excludible from her income under sections 22(b)(3)[2] and 102(b) of the Internal Revenue Codes of 1939 and 1954, respectively. He reasons that Esther compromised her statutory claim against her husband's estate in return for the right to receive trust income at intervals, relegating his personal assurance or guarantee to an insignificant role.

Esther contends that she bargained for a promise of James individually to pay her the fixed monthly payments, and that the trust income was but a designated fund from which payments were to be made if possible. She concludes that since the payments satisfied a personal obligation of James, the amounts thereof were required to be currently distributable to him under sections 162(b)[3] and 652 of the Internal Revenue Codes of 1939 and 1954, respectively.

It is settled that a payment received by an heir in settlement of a will contest is treated as if it were acquired by inheritance. *Lyeth* v. *Hoey*, 305 U.S. 188 (1938). The incidence of income taxation of the monthly payments upon Esther is clear if, pursuant to the settlement agreement, such payments were to be made from income from property rather than from property. *Harte* v. *United States*, 252 F. 2d 259 (C.A. 2, 1958).

In *Harte* a will contest settlement was involved. An heir released her claims in return for payments of $208.33 monthly for life to be made from dividends from certain stock held in a testamentary trust. The payments were held to be required to be paid from income from property and were taxable to her. The Second Circuit expressly

---

[2] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(3) GIFTS, BEQUESTS, DEVISES, AND INHERITANCES.—The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property, the amount of such income. For the purposes of this paragraph, if, under the terms of the gift, bequest, devise, or inheritance, payment, crediting, or distribution thereof is to be made at intervals, to the extent that it is paid or credited or to be distributed out of income from property, it shall be considered a gift, bequest, devise, or inheritance of income from property; \* \* \*

[Section 102 of the 1954 Code is to the same effect.]

[3] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. \* \* \*

[This provision is now sections 651 and 652(a) of the 1954 Code.]

declined to pass on whether the mere fact that payment had in fact been made from income from property was sufficient to tax the payment to the recipient under section 22(b)(3), *supra*.

*Darthey I. Williams*, 36 T.C. 195 (1961), presented facts from which we probably could have concluded that payments were required to be made out of income from property, however, we there held that the mere fact of payment from income rendered section 102 (b) applicable.

In the instant case the settlement agreement puts the primary responsibility for the monthly payments on income, and there is no real possibility that the payments would ever come from the trust corpus.

Esther attempts to distinguish *Harte* on the theory that James, individually, might have to pay her should the trust income be insufficient. *Tree* v. *United States*, 55 F. Supp. 438 (Ct. Cl. 1944), certiorari denied 324 U.S. 852, involved a settlement of a dower claim providing a widow with $85,000 annually from the income of her late husband's share of a trust established by his grandfather. Her brother-in-law, Marshall Field III, promised to pay the $85,000 per year to the extent the income from her husband's share of the trust was insufficient for this purpose. The court said (p. 448):

We now consider the effect of Marshall Field's agreement to make up any deficit if the income in the hands of the trustees was not sufficient to pay the $85,000. We see no reason why this additional promise, made as a term of the compromise, should have changed the nature of Mrs. Tree's interest from that of either dowress or assignee to some other kind of interest, the current receipts from which were not taxable income. If one should sell a piece of income-producing property to another, and, as an inducement to the purchase, should guarantee that the purchaser would receive at least a specified income from it, we suppose that such income as the purchaser did receive would be taxable as income, whether payments made by the seller on the guaranty were or not. The fact of Marshall Field's additional promise did not convert Mrs. Tree's whole interest into a mere promissory one. She was, under the court's decree, the owner of an interest in income-producing property, and of a right to receive that income up to the agreed amount. If Marshall Field III had lost his property and become unable to pay his guaranty, if necessary, she would still have received her income, just as she did receive it, so long as the property in the hands of the trustees produced it.

The trust res at the time of the instant agreement was valued at $367,000, and is now valued at over $1 million. At all times to date Esther has been paid wholly out of trust income, and in all likelihood James will never be called upon to discharge his secondary liability. We conclude that the payments to Esther were properly determined to be taxable to her. *Harte* v. *United States, supra; Tree* v. *United States, supra*.

Since Esther received taxable income, she was required to file income tax returns and declarations of estimated tax. No evidence of

any nature was introduced on behalf of Esther, and therefore no showing of reasonable cause for failure to file those instruments has been made. Although we suspect that Esther's failure to file may have been due to a belief that no tax was owing, such speculations cannot be a substitute for proof, and since there is a vacuum of proof, we sustain the additions to tax determined by respondent.

Since we have found that the trustee was obligated to make the monthly payments to Esther out of trust income, if any, such payments were not required to be currently distributable to James. Nor were they in discharge of a personal liability of his, since he was not the primary obligor and was not called upon to discharge his secondary liability. We therefore conclude that the monthly payments by the trustee to Esther did not constitute taxable income to James.

The payment of $1,037.57 made pursuant to the settlement agreement by the trustee in 1953 to Esther's attorney was not there designated to be paid out of income. As stated above, Esther is to be deemed as taking by inheritance. *Lyeth* v. *Hoey, supra.* The payment was made in partial satisfaction of her claim to a share of the trust res, and was not an inheritance of an income interest in that res. Instead it was made for her benefit as a "beneficiary" of the estate, and she received it as part of her "inheritance." *Lyeth* v. *Hoey, supra.* Therefore it is not taxable to her under sections 22(b)(3) and 102(a), *supra.*

Since this payment is treated as an inheritance of Esther, it cannot be deducted as a distribution of income by the estate, and respondent's determination that amounts currently distributable to James were so increased must be sustained.

The insurance premiums paid by the trust were deducted by it in determining distributable net income, but respondent has determined that this deduction is improper, and included these amounts in James' income. James relies on *Mary Helen Cadwalader*, 27 B.T.A. 1078 (1933), a case allowing a trust to deduct insurance premiums paid on a policy possessed by decedent at his death upon the life of another. The payments were held necessary to preserve a substantial asset of the trust.

In the instant case the policy was not an asset of the trust. The benefits were to go either to Esther or to the ultimate beneficiaries of the trust. In addition, if James predeceased Esther, the trust would terminate, and absent this insurance policy Esther's only right to enforce James' agreement to insure her receipt of monthly payments would be by claiming such payments from James' estate. We conclude that the premium payments were to discharge James' personal, contractual obligation and are taxable to him under the authorities cited above.

On brief James argues that the annual increase in the cash surrender value of the insurance policy should be taxable to Esther. In *Florence H. Griffith*, 35 T.C. 882 (1961), we rejected a similar contention where the wife could have cashed in the policy, a right Esther does not have. We adhere to *Griffith* and reject this contention of James.

No evidence has been introduced tending to show that James' failure to file a declaration of estimated tax for the taxable year 1953 was due to reasonable cause and not to willful neglect. We sustain respondent's assessment of this addition to tax.

*Decisions will be entered under Rule 50.*