**Bertha LEMLE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 74 Civ. 77 (WCC).**

United States District Court,
S. D. New York.

Sept. 2, 1976.

Blum, Haimoff, Gersen, Lipson & Szabad, New York City, for plaintiff; Joseph G. Blum, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant U. S.; William G. Ballaine, Asst. U. S. Atty., New York City, of counsel.

CONNER, District Judge:

The above-captioned action for refund of federal income taxes, brought pursuant to 26 U.S.C. § 7422, has been the subject of two prior Memoranda and Orders of this Court, the first dated March 31, 1975, the second dated February 3, 1976. In its first decision, the Court denied the parties' cross-motions for summary judgment; in its second decision, the Court once again denied an application by plaintiff for entry of judgment in her favor, pending the parties' submissions with respect to a potentially critical question of law that had been newly raised by defendant. This most recent chapter in an unhappily protracted litigation follows the Court's review of those submissions.

A full exposition of the events at the base of plaintiff's summary judgment motion appears in the March 31, 1975 Memorandum and need not be recited anew. The factual setting of this case will be retraced only to the extent necessary to the discussion of legal issues that follows.

I.

From the latter part of 1965 through 1967, plaintiff received a series of payments pursuant to her late husband's Last Will and Testament, which bequeathed to her, *inter alia,* a life interest in a portion of the net income generated by the residue of Mr. Lemle's estate. The checks representing those payments had been uniformly legended by the executors as "income distribution[s]," a characterization vigorously protested by plaintiff's attorney. Indeed, at the outset, the latter had advised the estate's representatives that his client's retention of the checks was, at least in his own view, without prejudice "to Mrs. Lemle's rights as a surviving spouse" and that those checks constituted

"payment * * * on account of the monies [Mrs. Lemle] will ultimately be entitled to receive out of the estate, whether by way of principal or income."

In February 1966, plaintiff filed a notice of election against the will, under then-effective Section 18–d of the New York Decedent Estate Law.[1] Maintaining that the terms of an antenuptial agreement disabled plaintiff from exercising her elective right, the executors refused to recognize plaintiff's statutory claim. Thus, the estate's federal tax returns reported the 1965, 1966, and 1967 payments to plaintiff as distributions from income to a will beneficiary, *i. e.,* distributions deductible from the estate's taxable income under 26 U.S.C. § 661.[2] Plaintiff, for her part, treated the pay-

---

1. Section 18 of the Decedent Estate Law has since been superseded by Section 5–1.1 of the New York Estates, Powers and Trusts Law.

2. Section 661 provides in pertinent part as follows:

(a) *Deduction.*—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and

ments received by her during those years as distributions drawn from estate principal and thus excludible from gross income under 26 U.S.C. § 102(a).[3]

The contest between plaintiff and the executors, culminating in a New York County Surrogate's Court proceeding, was ultimately resolved by the issuance of a consent decree in April 1971. The latter acknowledged plaintiff's right to a surviving spouse's elective share and provided for an adjustment of plaintiff's consequent claim against Mr. Lemle's estate. As this Court earlier noted, the 1971 settlement—referenced in the Surrogate's confirming decree—determined that payments to plaintiff, in satisfaction of her elective share, were to "consist[ ] of principal from the Estate" and further provided that "prior distributions would be considered as part payment of the total principal due" plaintiff. *Lemle v. United States,* Docket No. 74 Civ. 77 at 4 (S.D.N.Y. March 31, 1975).

Prior to consummation of the above-outlined compromise agreement, the Internal Revenue Service had assessed deficiencies with respect to plaintiff's income tax returns for the years 1965, 1966, and 1967, those assessments representing the difference between Mrs. Lemle's tax liabilities as reported and her tax liabilities computed on the premise that her receipts from the executors had constituted income distributions. Plaintiff paid the Internal Revenue Service the amounts assessed and, at the same time, filed claims for refunds of those amounts. The refund claims, as well as the present action which followed their disallowance by the Service, were bottomed upon Mrs. Lemle's contention that the 1965, 1966, and 1967 payments had been distributed from estate corpus and thus were not properly included in her gross income.

## II.

In its decision of March 31, 1975, this Court concluded—for reasons discussed at

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

length in the Memorandum—that the monies presently at issue had "constituted principal, not income," 74 Civ. 77 at 10, their character thus settled by the 1971 decree's vindication of plaintiff's claim as a surviving spouse. Plaintiff's motion was nonetheless denied in the light of defendant's contention that the 1971 settlement had been the product of collusion, a contention that raised material questions of fact foreclosing the entry of summary judgment. The Government thereafter conceded that it could supply no proof to support its allegation of collusion. Nevertheless, defendant urged the Court not to sign the proposed judgment order submitted by plaintiff in response to the Government's concession. In so doing, the Government has invited this Court to traverse a legal ground apparently discovered by defendant only after the Court's disposition of the parties' original cross-motions.

## III.

The Government's present position is founded upon the operation of Sections 102 and 662 of the Internal Revenue Code. According to the Government, a review of those sections and the regulations thereunder belies what earlier had been assumed by both the parties and the Court—*i. e.,* that plaintiff would have been entitled to exclude from her gross income all distributions from Mr. Lemle's estate if those distributions had been from corpus. Thus, defendant argues, principal distributions from an estate may be includible in gross income, within the meaning of Section 102(b) of the Internal Revenue Code, under circumstances described in Section 662(a).

Section 102(b)(2) prescribes that, "where [a] gift, bequest, devise, or inheritance is of income from property, the amount of such income" may not be excluded from gross income. The section further provides that

**3.** Section 102(a) provides that, "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

"[a]ny amount included in the gross income of a beneficiary under subchapter J shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property."

■ Section 662(a), a provision within Code subchapter J, Chapter 1, in pertinent part directs that the gross income of a beneficiary—*i. e.,* an heir, legatee, or devisee (26 U.S.C. § 643)[4]—shall include the sum of

"(1) * * * [t]he amount of income for the taxable year required to be distributed currently [by an estate or trust described in Section 661] to such beneficiary, whether distributed or not. * * *

"(2) * * * [a]ll other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries

exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries."

From the above provisions the Government concludes that, notwithstanding this Court's earlier determination that the amounts at issue must be treated as distributions of principal, plaintiff cannot counter the inclusion in her 1965–67 gross income of at least some portion of those distributions unless she can demonstrate that the

"amount of income of the estate which was 'required to be distributed currently' to beneficiaries in those years—i. e. first tier amounts—equalled or exceeded the estate's distributable net income in each year." Defendant's Memorandum at 9.

## IV.

An estate beneficiary may well regard Section 662 as the engine of an unhappy metamorphosis. Thus, as the Government has indirectly noted, a distribution that has in truth been drawn from estate corpus may—by force of Section 662 provisions and for purposes of the gross income calculus—be converted into includible income if the "income required to be distributed currently" by the estate does not at least equal the estate's "distributable net income" for the taxable year.

■ The design of Section 662 is clear enough: the section as presently framed effectively eliminates the problem of tracing distributions to their source, a problem that had inevitably attended the former statutory schema. See 1954 U.S.Code Cong. & Admin.News at pp. 4086–87, 4621, 4714–15, 4990 (83d Cong., 2d Sess.). It is equally clear that distributions representing an elective share in the corpus of a deceased spouse's estate may be subject to the conclusive presumption raised by Section 662. See 26 U.S.C. § 663 and 26 C.F.R. § 1.663(a)–1(b).[5]

■ Plaintiff argues, however, that the amounts now under contest are not addressed by Section 662 because those amounts were not "properly paid." Plaintiff would rest that contention upon the 1971 decree's confirmation of her right to

---

4. The Section 643 definition of the term "beneficiary" apparently is not intended to be exclusive. That is, the term "beneficiary" within the meaning of Section 662 clearly comprehends additionally the beneficiary of an inter vivos trust.

5. A dower interest, in contradistinction to a surviving spouse's elective share, is excepted from Section 662 coverage. The rationale behind this difference in tax treatment is indirectly revealed in 26 C.F.R. § 1.663(a)–1(b).

an elective share. That undisputed fact, plaintiff maintains, consequently establishes that the 1965–67 checks—identified by the executors as distributions from income and issued in accordance with Mr. Lemle's will—were necessarily improper payments. After all, plaintiff notes, "by the very act of filing her intention to take her elective share, [Mrs. Lemle had] effectively terminated and waived any right she might have [had] to distributions of income pursuant to * * * her late husband's will." Plaintiff's Memorandum at 6. Thus, plaintiff reasons,

"During the entire period in question, the plaintiff's rights in the estate were undetermined and her ultimate right to the distributions of income was contingent on a rejection of her claim of election. As a matter of law, if her right of election were sustained, she would be obligated to return to the estate the money paid as distributions of income. *In re Lieberman's Will*, 206 Misc. 263, 132 N.Y.S.2d 558 (195[4])." *Id.* at 10.

Plaintiff's argument need not detain us long. It is enough to note that plaintiff's entitlement to *payments* from the executors during 1965–67—whether those payments consisted of income distributions under Mr. Lemle's will *or* distributions of principal under Section 18–d—was at no time the subject of dispute; rather, the disagreement between Mrs. Lemle and the estate representative reflected solely on the *character* of the 1965–67 receipts.

The 1971 Surrogate's Court decree hardly established that the executors had improperly distributed income to plaintiff. Indeed, in her previous submissions to this Court, plaintiff herself had underscored what she apparently at this juncture has chosen to forget: as the Court has already observed, the 1971 decree determined, *nunc pro tunc*, that the 1965–67 payments had represented principal distributions toward satisfaction of plaintiff's elective share.

But even more to the present point, the character of the 1965–67 payments, however ultimately determined, would not in any event have affected the propriety of such payments during the subject period. To be sure, plaintiff's status either as a testamentary beneficiary or as a statutory heir remained unsettled during that period. Plaintiff was at the time, nonetheless and beyond question, either the one or the other—and was therefore properly the recipient of payments by the executors. Plaintiff has in no way suggested otherwise, *i. e.,* that either by the provisions of Mr. Lemle's will or by the terms of Section 18 of the Decedent Estate Law, *cf.* New York Estates, Powers and Trusts Law § 11–1.5, the executors had been bound to withhold such amounts from plaintiff during the years in question.

Nor does plaintiff's citation of *In re Lieberman's Will, supra,* avail her here. The ruling in that case no more than echoes the established principle that one who "'rescinds [a] contract * * * must do so in toto and return the consideration received on the contract sought to be rescinded.'" 132 N.Y.S.2d at 559. The *Lieberman* decision thus, for present purposes, supplies no relevant instruction.

## V.

Notwithstanding the above, plaintiff would have this Court conclude that by independent operation of New York law and the 1971 decree "there was no * * * undistributed distributable net income for the years in question," Plaintiff's Memorandum at 19, that would allow the Government's resort under Section 662 to the second-tier amounts paid plaintiff. The substance of plaintiff's two-fold argument is as follows:

1) Plaintiff's ultimately successful exercise of her elective right resulted in an automatic acceleration of the testamentary trust that plaintiff had thereby renounced. In consequence, plaintiff reasons, other residuary beneficiaries automatically succeeded, by the terms of Mr. Lemle's will and under relevant New York case law, to Mrs. Lemle's trust income interest and, again in accordance

with the will provisions,[6] thereby absorbed the entirety of the testamentary trust's net income for the years 1965, 1966, and 1967.

2) The 1971 decree incorporated by reference a Supplemental Petition to the effect, *inter alia,* that Mr. Lemle's daughters were to absorb any increased tax liabilities that otherwise would be borne by plaintiff as a result of the settlement to which plaintiff, the estate representatives, and the Lemle daughters were parties. The Government's recourse, plaintiff argues, was thereby limited solely to assessments against persons other than plaintiff.

■ Each of the above-recited arguments gives little reason for pause. Two observations suffice to dispatch the latter of those arguments. First, the Surrogate's Court decree did not, as plaintiff would have it, incorporate the Supplemental Petition upon which plaintiff relies;[7] in any event, those portions of the parties' agreement that were so incorporated and that bear arguable relevance in this respect appear to have expressed no more than an estimate, by the parties' attorneys, of the tax implications flowing from the parties' settlement. Moreover, plaintiff has—understandably—cited no authority for the proposition that a person may by private agreement so effectively shift his tax liability to another that the Government will be bound thereby. Indeed, were the law so framed, the statute of limitations on Internal Revenue Service assessments would become a matter most cherished by reticent friends.

This of course by no means suggests that Mrs. Lemle and other parties to the 1971 settlement may not have entered into a contract of indemnity that is wholly binding inter sese. But, if such be the case, in the face of the present litigation, it is plaintiff's recourse—rather than the Government's—that has thereby been defined.

Plaintiff's remaining contention is quite clearly damned by its own terms. This Court has already ruled that plaintiff received the amounts at issue as a beneficiary of Mr. Lemle's estate. Although, as defendant has suggested, this Court's present inquiry under Section 662 must therefore be addressed to "the distributions required to be made currently by the *estate,* other amounts properly paid by the *estate,* and distributable net income of the *estate* in 1965, 1966 and 1967," Defendant's Memorandum at 10–a, it is the testamentary trust upon which plaintiff's final argument centers. Plaintiff's focus is thus wholly misdirected, for

"[a] trust, though created by the same will under which an estate is being administered, is a distinct tax entity as soon as it comes into being and has income attributable to it, even though the same individual is executor of the estate and trustee of the trust." 6 Mertens, Law of Federal Income Taxation § 36.44, at 114 (1976).[8]

---

**6.** The assertedly pertinent portion of Mr. Lemle's will reads as follows:

"1. [The trustees are authorized to] invest and reinvest and keep the same invested; to collect and receive the income thereof and after paying therefrom all legal charges and expenses, to pay over in monthly installments the net income of each trust herein created to my wife, BERTHA, my daughter BLANCHE, and my daughter JEANETTE, for so long as each shall live.

"2. Upon the death of any of the persons who are the beneficiaries of said individual and separate trust, I direct that the trust for each deceased beneficiary be continued and that the income thereof be paid to the survivors * *."

**7.** The Surrogate's Court decree "approved, authorized and ratified" only the three "compromise agreements" that were annexed to the Supplemental Petition, rather than the latter itself. See Index G, attached to plaintiff's original motion papers, at 3.

**8.** The Court need not presently determine whether the testamentary trust was *in esse* at the time the amounts in issue were paid to plaintiff, nor need it now consider the possible tax implications of such determination. See 6 Mertens, *supra,* at § 36.44 n. 4; whether or not the trust established by Mr. Lemle's will had, in fact and in law, an independent existence for federal tax purposes might affect the ultimate computation of Mrs. Lemle's tax liabilities during the years in question, but would not conclude the refund question presently before the Court.

■ We are left, therefore, without relevant evidence by which to gauge plaintiff's present claim against the provisions of Section 662. As to plaintiff's charge that the Government will "at some future date * * * come in with [the] concession that it has no evidence on the point," Plaintiff's Memorandum at 4, this Court need only observe that "[i]n a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis,* —— U.S. ——, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976).

For the reasons discussed above, plaintiff's motion for summary judgment must again be denied.

SO ORDERED.