Bertha **LEMLE**, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 490, Docket 77–6145.

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1978.

Decided June 5, 1978.

---

**89.** *New York Times*, Apr. 16, 1978, at 24, Col. 2.

Louis Haimoff, New York City (Blum, Haimoff, Gersen, Lipson & Szabad, Joseph G. Blum and Seymour J. Kehlman, New York City, of counsel), for plaintiff-appellant.

William G. Ballaine, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Patrick H. Barth, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before FRIENDLY and VAN GRAAFEILAND, Circuit Judges, and DOOLING,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

Bertha Lemle's husband died in 1964, leaving a last will and testament which provided that she was to receive the net income for life of one-third of his residuary estate payable in monthly installments. Following probate of the will in 1965, the executors commenced monthly payments and continued them through 1970.[1]

On February 3, 1966, appellant filed a notice of election in Surrogate's Court, New York County, pursuant to Section 18–b of the New York Decedent Estate Law (now Section 5–1.1 of the New York Estates Powers and Trusts Law) contending that her husband's will provided her with less than her elective share. If successful in this proceeding, appellant would recover one-third of her husband's gross estate, one-third of the income received by the estate and one-third of the appreciation in the value of the estate's assets after Mr. Lemle's death. Upon receipt of the first monthly installment checks from the executors, appellant's attorney wrote to the attorneys for the estate stating that, although the checks were designated as "income distribution," no inference should be drawn therefrom. The letter continued, "The payment is made to her on account of the monies she will ultimately be entitled to receive out of the estate, whether by way of principal or income."

From 1965 through 1967, the years at issue herein, appellant indicated on her tax returns that the distributions she had received from the estate were payments of principal, i. e., prepayments of her elective share. The executors, however, reported them as distributions of income. Following audit by the I.R.S., deficiencies were assessed against appellant for the three years in question based upon the Service's treatment of the distributions as income. In this action, appellant seeks the refund of these allegedly erroneous assessments.

Because appellant had signed an antenuptial agreement waiving her right of election, her attempted exercise of this right was of questionable validity. However, in 1971, an agreement was reached by all of the parties in interest whereby appellant's claim was compromised for $453,-712.25 payable from the principal of the estate. Under the agreement, the payments already made to appellant were treated as part-payment of the total settlement figure, i. e., principal. No provision was made for reallocation to other income beneficiaries of the payments theretofore made to appellant as income distribution or for payment by them of the tax thereon. The agreement provided instead that the estate accountants would prepare "whatever amended tax returns may be necessary" for these beneficiaries and that the executors and trustees would pay to the beneficiaries from the principal of the trust an amount equal to all the income taxes "which may be due, payable by or assessed against" the beneficiaries by reason of the settlement. As it turned out, neither the

---

* Honorable John F. Dooling, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. The will provided for the creation of a trust out of which the income payments were to be made. However, it appears that appellant's challenge to the will delayed the funding of the trust.

estate nor the other beneficiaries filed amended returns covering the income of the estate which the parties to the compromise agreed had not been distributed to appellant, and no one except appellant paid a tax thereon. The agreement was approved by the Surrogate on April 7, 1971, in a proceeding to which the government was not made a party.[2]

Appellant's action for refund was tried before Judge Conner in the Southern District of New York, who wrote four opinions, three on motions for summary judgment and the fourth on appellant's agreement to submit her case on the stipulated facts and affidavits.[3] In his third opinion, Judge Conner held that under § 662 of the Internal Revenue Code, 26 U.S.C. § 662, appellant would be chargeable with at least some receipt of income for the years at issue unless she could establish that the income which the estate was required to distribute each year equalled or exceeded the estate's distributable net income for that year. *Lemle v. United States*, 419 F.Supp. at 70–74.[4] Appellant offered no proof on this point, although given the opportunity to do so; accordingly, her complaint was dismissed.

In Judge Conner's first opinion, he stated that monies received pursuant to a compromise agreement are treated for tax purposes according to the claims asserted and settled in the litigation, citing as authority *Lyeth v. Hoey*, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938) and *Harte v. United States*, 252 F.2d 259 (2d Cir. 1958). He then held that, because appellant was claiming one-third of the principal of her husband's estate, "the compromise agreement was in-

tended to reflect a concession to this claim to principal." Relying on this holding, appellant contends that the principal distributions which she received could not be transformed into income by the provisions of § 662. We find no need to address this contention because we conclude that the 1965–67 payments were not distributions of principal.

■ Under New York law, a widow who exercises her right of election is entitled to a pro rata share of the income received by the estate during the period of its administration. *Matter of Giddings*, 198 Misc. 536, 538, 99 N.Y.S.2d 368 (Sur.Ct. 1950); *Matter of Kent*, 180 Misc. 567, 569, 45 N.Y.S.2d 449 (Sur.Ct.1943); *Matter of Oakley*, 175 Misc. 463, 465, 24 N.Y.S.2d 28 (Sur.Ct.1940). Prior to the making of the compromise agreement, the executors of Mr. Lemle's estate made payments of income to Mrs. Lemle which were accepted by her and never returned. Where payments are made as here out of estate income, they are taxable to the recipient, *Williams v. Commissioner*, 36 T.C. 195 (1961), and *Lyeth v. Hoey, supra*, does not require us to honor an after-the-fact agreement that monies received as income be treated as principal. *Tree v. United States*, 55 F.Supp. 438, 447–48, 102 Ct.Cl. 128 (1944); *Hale v. Anglim*, 49 F.Supp. 837 (N.D.Cal.1943), *aff'd*, 140 F.2d 235 (9th Cir. 1944); *Delmar v. Commissioner*, 25 T.C. 1015 (1956).

■ If appellant's claim against her husband's will had been litigated successfully to final judgment, her right to a share of the income earned by his estate during its administration could not have been questioned. *Cf. Helvering v. Safe Deposit &*

2. The statute of limitations on proceedings for collection of unpaid taxes is three years. 26 U.S.C. § 6501. The district court made no findings as to the effect of this limitation period on claims which the government might have asserted against the estate or other trust beneficiaries.

3. *Lemle v. United States*, No. 42123 (S.D.N.Y. March 31, 1975); *Lemle v. United States*, No. 43839 (S.D.N.Y. Feb. 3, 1976); *Lemle v. United States*, 419 F.Supp. 68 (S.D.N.Y.1976); *Lemle v. United States*, No. ·——— (S.D.N.Y. June 28, 1977).

4. 26 U.S.C. §§ 661 and 662 provide in substance that, if the income which an estate is required to distribute does not exhaust all of the estate's distributable income, distributions of principal will be treated as income distributions to the extent of the unexhausted distributable income. In other words, every distribution is deemed to be a distribution of estate income to the extent that such income is available. *Harkness v. United States*, 469 F.2d 310, 315, 199 Ct.Cl. 721 (1972), *cert. denied*, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973).

*Trust Co.*, 316 U.S. 56, 64–65, 62 S.Ct. 925, 86 L.Ed. 1266 (1942). The issue here presented is whether, having already received payments out of estate income, appellant can, by subsequent compromise agreement, recharacterize them as payments of principal. *Helvering*, 316 U.S. at 65, 62 S.Ct. 925, held that a compromise reflecting what the plaintiff might have received in litigation involving estate tax liability might be made after the taxable event, in that case, the decedent's death. Here, however, we are dealing with estate income already paid and a compromise agreement which did not truly reflect what the successful outcome of litigation would have established concerning its ownership. Under these circumstances, compromise of the proceeding brought to enforce appellant's election against the will, which under New York law includes a claim to administration income, should not be permitted to convert the income already received into principal. *Cf. Harrison v. Commissioner*, 119 F.2d 963, 969 (7th Cir. 1941). No such private agreement should foreclose the government from the collection of its taxes. *Cf. Thompson's Estate v. Commissioner*, 123 F.2d 816, 818 (2d Cir. 1941). Courts "will not be bound by the parties' self-serving characterization of the settled claim." *Elrick v. Commissioner*, 158 U.S.App.D.C. 270, 276, 485 F.2d 1049, 1054 (1973).

█ The fact that the settlement agreement was adopted by the Surrogate did not make its provisions binding upon the district court. The Surrogate was not making a contested construction of New York law. *See Estate of Smith v. Commissioner*, 510 F.2d 479, 482–83 (2d Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975). His decree "may not serve to record a fact as of a prior date when the fact did not then exist." *Daine v. Commissioner*, 168 F.2d 449, 451 (2d Cir. 1948); *see also United States v. Bosurgi*, 530 F.2d 1105, 1112 (2d Cir. 1976); *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

In summary, we hold that under the facts of this case the payments received by appellant between 1965 and 1967 should not be interpreted to be distributions of principal,

so as to entitle appellant to the refund which she seeks.

█ Appellant contends that the government "acquiesced" in her claim that the 1965–67 payments were non-taxable because the local IRS agent indicated initially that he would allow her claim for a refund and also because the government did allow the estate a marital deduction for a payment made to appellant under the settlement. The short answer to appellant's contention is that there has been no showing that she relied in any manner to her detriment upon the government's actions. We therefore find no basis for estopping the government from disputing appellant's claim to a refund. *See Knetsch v. United States*, 348 F.2d 932, 940, 172 Ct.Cl. 378 (1965), *cert. denied*, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966); *Bornstein v. United States*, 345 F.2d 558, 563, 175 Ct.Cl. 576 (1965); *Knapp-Monarch Co. v. Commissioner*, 139 F.2d 863, 864 (8th Cir. 1944). *See generally* 10 Mertens, *Law of Federal Income Taxation* §§ 60.02 and 60.14.

The judgment appealed from is affirmed.