Rebekah **HARKNESS**

v.

The **UNITED STATES.**

No. 316–65.

United States Court of Claims.

Nov. 10, 1972.

As Amended Dec. 1, 1972.
As Amended Feb. 2, 1973.

James A. Glascock, Jr., New York City, for plaintiff. Weston Vernon, Jr., New York City, attorney of record. Clarence E. Dawson, Washington, D. C., of counsel.

Milan D. Karlan, with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARA-MORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## OPINION

PER CURIAM:*

In her 1955 federal income tax return, plaintiff included in her gross income $413,379.04 as income received during that year from her husband's estate. In 1961, the District Director of Internal Revenue for the Manhattan District, New York, took the position that,

---

* This opinion incorporates the opinion of Trial Commissioner Saul Richard Gamer (now Chief Commissioner), with modifications and additions made in the light of the presentation by the parties to the judges which, in the case of the Government, differed in substantial part from the presentation to the Trial Commissioner.

instead of such sum, plaintiff should have included the amount of $630,740.04, *i. e.*, an additional $217,361. The inclusion of such larger amount in plaintiff's gross income resulted (after the making of various adjustments) in plaintiff's allegedly owing an additional $188,153.-35 in income tax for such year, and the Director at that time assessed plaintiff in such amount, plus interest thereon in the amount of $60,103.40, or a total of $248,256.75. Plaintiff paid the additional tax and interest so assessed, and then filed a timely claim for refund therefor. Having received neither a notice of disallowance nor any refund, plaintiff instituted the instant suit to recover such assessed amount, plus interest.

Plaintiff's husband died on August 12, 1954. By his will, he gave plaintiff one-half of his residuary estate. The remaining half was, after the deduction therefrom of any "legacy, succession, transfer, estate or inheritance taxes payable by [the] estate with respect to any property disposed of by [the] Will or payable by any recipient of any such property," given, in equal shares, to the trustees of four testamentary trusts for the children of plaintiff and the decedent (*i. e.*, the issue of their or prior marriages). The will provided that such taxes "shall be paid by [the] Executors out of [the] estate as part of the expenses of administration thereof," with the proviso that "no part of such taxes shall be deducted from or payable out of the one-half (½) of [the] residuary estate" which the decedent bequeathed to plaintiff.

During 1955, and prior to the ultimate distribution of the residuary estate, the executors made distributions to the five beneficiaries thereof in the total sum of $36,004,082.23. Of this amount plaintiff, by eleven payments, received $27,-467,768.51. The four trusts, by ten payments to each, received the balance of $8,436,295.75 (in equal shares of approximately $2,134,000). All the distributions were in the form of cash, stocks and bonds. None of the distributions were required by the will to be made prior to the ultimate distribution of the residuary estate.

The federal fiduciary income tax return filed by the executors on behalf of the estate showed distributable net income [1] for 1955 in the amount of $1,005,-682.94. A deduction of $826,758.68 was shown on the return for distributions of such income to the five residuary estate beneficiaries, the difference of $178,924.26 between such two figures consisting of tax-exempt income (and expenses allocable thereto).

Section 662(a)(2)(B) of the Internal Revenue Code of 1954 (26 U.S.C. § 662 (a)(2)(B) (1958)) provides that, where the amounts distributed to all beneficiaries of an estate accumulating income or distributing corpus exceed the distributable net income of the estate, each beneficiary shall include in his gross income an amount which bears the same ratio to distributable net income as the total amount distributed to him bears to the total of the amounts distributed to all the beneficiaries.[2]

---

1. Section 643 of Part I, "Estates, Trusts and Beneficiaries," of Subchapter J, "Estates, Trusts, Beneficiaries, and Decedents" of the Internal Revenue Code of 1954 (26 U.S.C. § 643 (1958)) defines the term "distributable net income" as "the taxable income of the estate or trust" with certain modifications set forth therein.

2. Section 662 provides as follows:
 § 662. Inclusion of amounts in gross income of beneficiaries of estates and trusts accumulating income or distributing corpus.

 (a) *Inclusion.—*
 Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:
 (1) *Amounts required to be distributed currently.—*
 The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. If the amount of in-

The amount of $27,467,768.51 which plaintiff received in 1955 from the residuary estate equaled 76.2907 percent of the total amount of $36,004,082.23 distributed to all beneficiaries during such taxable year. Since such total amount distributed exceeded the distributable net income, the District Director concluded that the provisions of Section 662 (a)(2)(B) were applicable and accordingly applied the same percentage to the taxable distributable net income of the estate, the resulting figure being regarded as the amount which plaintiff should have included in her gross income. Application of such 76.2907 percent to the taxable distributable net income figure of $826,758.68 produces the aforementioned figure of $630,740.04 as the amount the District Director concluded plaintiff was required by the statute to have included in her gross income. The inclusion of such amount in plaintiff's gross income produced the additional income tax which is the subject of this suit.

Plaintiff contends that, pursuant to accurate accounting by the executors in calculating the amount of the estate corpus and income which they distributed to the five beneficiaries in 1955, she in fact actually received during the year only the taxable amount of $413,379.34, which amount was but one-half of the taxable distributable net income, and not 76.2907 percent thereof, the figure that the statutory formula produces. Such accounting in the administration of the estate was, plaintiff says, in no way tax motivated, but was in accordance with common practices followed at that time by executors in New York in the administration of estates, and was permitted by the terms of the will and applicable local law. Furthermore, she points out, the accounts of the executors for the year 1955, which set forth the income distributions to plaintiff and the four trusts on a basis of one-half to plaintiff and the other half to the trusts, were judicially settled and allowed by the Surrogate Court of New York County, New York.[3]

Although the approximately $27,500,-000 paid to plaintiff during the year greatly exceeded the aggregate amount of approximately $8,500,000 paid to the four trusts, each of such total payments concededly consisting of both corpus and income, plaintiff says that such unequal amounts nevertheless included the equal

---

come required to be distributed currently to all beneficiaries exceeds the distributable net income (computed without the deduction allowed by section 642(c), relating to deduction for charitable, etc., purposes) of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (as so computed) as the amount of income required to be distributed currently to such beneficiary bears to the amount required to be distributed currently to all beneficiaries. For purposes of this section, the phrase "the amount of income for the taxable year required to be distributed currently" includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year.

(2) *Other amounts distributed.*—

All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.

3. Three of the four children were minors and a special guardian appointed by the court to represent them reported that, insofar as their interests were concerned, the executors' accounts were correct.

amounts of $413,379.34 of taxable net income. For this result, plaintiff relies upon the manner in which the executors made their distributions of what they designated as "corpus." The executors, in accordance with a common New York practice, made simultaneous distributions of "principal" and "income" among all the residuary legatees on a basis proportionate to their respective interests in the residuary estate. Further, since here the will directed that all legacy, succession, transfer, estate, or inheritance taxes (sometimes collectively referred to as "death taxes") were to be paid as administration expenses of the estate, but with plaintiff's share of the residuary estate to be undiminished thereby, whenever the executors made any such tax payments (which were, according to their accounting, entirely out of corpus), they also made, again following a common New York practice where wills provided for payment of death taxes out of one or more shares of the residue but not out of one or more other shares, "corpus" distributions to the plaintiff simultaneously with and in the same amounts as such tax payments. Thus, these simultaneous distributions to plaintiff always served, says plaintiff, to keep the remaining corpus interests of the plaintiff and the four trusts in the residuary estate in equal balance, with such equal corpus shares therefore always generating equal amounts to income. The result of adopting these simultaneous distribution practices was the avoidance of complicated calculations of shares of income earned, over varying periods of time, by unequal shares of principal (or by undistributed income). (In this case the decedent's will specifically provided that the income should be distributed proportionately to the residuary legatees, and that if distribution of the residuary estate was not made simultaneously, "an adjustment of the income shall be made by my Executors.") To illustrate, when, on January 1, 1955, the executors distributed $1,125,000 to each of the trusts —amounts which the executors designated as coming entirely from corpus [4]— they simultaneously paid plaintiff $4,500,000, also designated as a corpus distribution. And when, on February 8, 1955, they paid $4,310,000 on account of the New York estate tax, they distributed the identical amount (again designated as principal on their accounts) to plaintiff. Similarly, when on November 14, 1955, they paid $14,621,454.81 on account of the federal estate tax, plus an amount aggregating $3,524,558.49 to the four trusts, such sums totaling $18,146,013.29, they distributed the identical total sum to plaintiff (all amounts again being designated as coming entirely out of principal). In accordance with the will, the New York and federal estate tax payments were deducted from the trusts' aggregate one-half interest in the residuary estate. The several 1955 distributions to plaintiff and the four trusts which the executors designated as distributions of estate income were so calculated by the executors that the amount of such income distributed to plaintiff on any date equaled the aggregate amount distributed to the trusts on the same date.

It is on the above basis that plaintiff argues she actually received only one-half of the distributable net income of the estate in 1955, and not 76 percent.

In a situation such as the instant one, plaintiff contends, Section 662(a)(2)(B) was not intended to be applicable for the formula there prescribed would attribute to plaintiff income which she in fact did not receive. She should not, she argues, have attributed to her more than her actual share of estate income simply because the executors, in their authorized discretion, made principal distributions to her in order to balance the death tax payments and other principal distributions to the trusts. The purpose of the statutory provision here involved was, she contends, to prevent fiduciaries, where the estate had principal, current

4. As of that date, the executors' accounts showed $1,155.42 of undistributed 1954 estate income.

income, and accumulated income, from controlling tax consequences by manipulating distributions, as, for instance, making distributions designated as coming from "income" to beneficiaries in low income tax brackets, while distributions designated as coming from "principal" are made to beneficiaries in high brackets, and therefore not taxable at all.[5] There was no intent here on the part of the executors, she argues, to gain any kind of income tax advantage for plaintiff.

These contentions cannot be accepted as justifying recovery. There can be no doubt but that plaintiff's situation falls squarely within the literal provisions of Section 662(a)(2)(B), and plaintiff is not understood to contend otherwise. The nub of her contention is that the payments here involved should not be treated as being covered by the statute because the executors' actions were not tax motivated. Even so, the section applies. Clear statutory coverage of this kind, based upon a presumption that any distribution is deemed to be a distribution of the estate's income to the extent of its income for the year, does not and cannot be made to depend on such intangible factors as the subjective intent of executors.

Section 662(a)(2)(B) was specifically intended, for the purposes of that section, "to avoid the necessity for tracing of income." [6] Such tracing was required by the 1939 Code, which provided that distributions by an estate or trust to its beneficiaries were taxed to the beneficiaries for the taxable year in which they received the distributions only if the distributions were made from the current income of the estate or trust.[7] As shown, this lent itself to various kinds of manipulations by executors in the labeling of estate moneys as "income" or "principal." To eliminate such manipulations and tax consequences based upon such estate tax accounting designations of what was "principal" and "income" and from which source a distribution had been made, the "tracing" requirement was, for such distribution purposes, eliminated. Instead, "[t]he beneficiary's proportionate share of the distributable net income * * * is determined by taking the same fractional part of [the] distributable net income * * * as the * * * amounts * * * distributed to him * * * bear to the total of [the] amounts * * * distributed to

---

5. Under 26 U.S.C. § 102 (1970), the value of property acquired by bequest is not taxable income to the distributee. However, income from bequeathed property, as well as a gift composed of income from property, must be included in the legatee's gross income. The section goes on to provide, however, in subsection (b), that amounts included in the gross income of a beneficiary under Subchapter J, pertaining to "Estates, Trusts, Beneficiaries, and Decedents," and which contains Section 662, shall be treated as a bequest of income from property. Section 663(a)(1) of Subchapter J excludes from amounts falling within Section 662(a) any amount which, under the terms of the governing instrument, is paid as a gift or bequest of a specific sum of money or of specific property, provided it is paid all at once or in not more than three installments. It further provides, however, that "an amount which can be paid * * * only from the income of the estate or trust shall not be considered as a gift or bequest of a specific sum of money."

6. H.R.Rep.No.1337, 83d Cong., 2d Sess. A199, 3 U.S.C.Cong. & Adm.News, pp. 4017, 4339 (1954); S.Rep.No.1622, 83d Cong., 2d Sess. 349, 3 U.S.C.Cong. & Adm.News, pp. 4621, 4990 (1954).

7. For instance, under Section 162(d) of the 1939 Code, as amended, a distribution, in the first 65 days of a taxable year, of income of the preceding taxable year, was treated as having been made in such preceding year. In addition, if there also was current year income, tracing was necessary to determine which year's income had been distributed. And, in addition to the current-accumulated interest problem, tracing would, of course, be required to determine whether the distribution contained corpus. 26 U.S.C. § 162(d) (1946).

all beneficiaries." [8] In short, Congress wished to establish an easily useable formula, and to avoid both the necessity of "tracing" and an inquiry into the subjective intention of executors or trustees. As was pointed out in Manufacturers Hanover Trust Co. v. United States, 312 F.2d 785, 793, 160 Ct.Cl. 582, 596, cert. denied, 375 U.S. 880, 84 S.Ct. 150, 11 L. Ed.2d 111 (1963):

> * * * Around this concept of "distributable net income" the Code builds its provisions for (a) the deduction allowed the trust for its current distributions to the beneficiaries, and (b) the distributions which the beneficiaries must include in their own gross incomes. "Thus, distributable net income has been termed the measuring rod or yardstick to be employed in determining, on the one hand, the maximum deduction for distributions which may be allowed to the estate or trust and for gauging, on the other hand, the extent to which beneficiaries may be taxable on the distributions." 6 Mertens "Law of Federal Income Taxation" § 36.04.

We accept plaintiff's contention that there were no tax motivations on the part of the executors in making the distributions at the times and in the amounts they did, and that they made the "balancing" corpus distributions to plaintiff only to avoid complicated calculations of estate income due to the beneficiaries which would result from their having disproportionate interests in the residuary estate.[9] The fact nevertheless remains that, by making the discretionary "balancing" distributions as they did—required neither by the will nor state law—plaintiff received, under their estate accounting, less of the distributable net income than she probably otherwise would have.[10] There is no showing that—

8. 3 U.S.C.Cong. & Adm.News, *supra* n. 6, at pp. 4340, 4990. The portions of the House and Senate Reports here involved are identical. *Id.*, at pp. 4339–40, 4989–90. In pertinent part, they stated:

> Subsection (a) provides that the beneficiary of an estate or trust * * must include in gross income any amounts paid, credited, or required to be distributed to him for the taxable year of the estate or trust; however, the amount so includible may not exceed the beneficiary's proportionate share of the distributable net income. The effect of limiting the taxation of a beneficiary to his proportionate share of the distributable net income is to preserve the conduit principle by providing that all distributions * * * from an estate or trust will be taxable but not to an extent in excess of the taxable income of the estate or trust * *. It is thus possible largely to avoid the necessity for tracing of income which exists generally under existing law. Instead of determining whether a particular distribution represents amounts of current or accumulated trust income, this revision, broadly speaking, provides that any distribution is considered a distribution of the trust or estate's current income to the extent of its taxable income for the year. This principle is similar to the determination of whether a dividend has been distributed, i. e., that every distribution made by a corporation is deemed to be out of earnings and profits to the extent thereof and from the most recently accumulated earnings and profits.

> * * * * *

> If the estate or trust pays * * * to beneficiaries amounts other than income which is required to be distributed currently, paragraph (2) provides that these other amounts * * * are includible in the gross income of the recipient beneficiaries but only to the extent of each beneficiary's proportionate share of the distributable net income * * *. * * * The beneficiary's proportionate share of the distributable net income * * * is determined by taking the same fractional part of such distributable net income * * * as the other amounts paid * * * bear to the total of other amounts paid * * * to all beneficiaries. * * *

9. Such as would occur after the death taxes were paid and deducted from the shares of the trusts, thereby diminishing the interests of the trusts in the residuary estate from the dates of such payments, with proportionate diminutions in the income which would be produced after such dates from such diminished shares.

10. Defendant, apparently attempting to minimize the complications were the balancing distributions not made, cites In

either by not making distributions until the estate was wound up finally, or otherwise—the residuary estate could not have been so managed as to produce the same result as the statutory formula. Thus, in that sense (and not in the sense of tax avoidance), the distributions were "manipulated" so that plaintiff, who received over 75 percent of the 1955 payments, is nevertheless said to have received in that year only 50 percent of the taxable distributable net income. On its face and as its purpose is shown by its development and legislative history, the statute was designed to prevent such a result for tax purposes. Indeed, the statutory formula could be considered as providing the more natural and logical result—income earned during the administration of the residuary estate is allocated to the beneficiaries in the same ratio as their interest in the corpus of such estate. Generally, of course, various percentages of corpus will produce like percentages of income. It is thus plain that plaintiff's situation is, by the unambiguous provisions thereof, covered by the statute [11] and although recognizing, of course, the difficulties involved in envisaging every specific situation that could arise under general statutory language, it would nevertheless appear to constitute the type of situation that Congress intended should be covered.[12]

Re Shubert's Will, 10 N.Y.2d 461, 225 N.Y.S.2d 13, 180 N.E.2d 410 (1962), which it construes as holding that, under Section 17–b of Personal Property Law, N.Y.Consol.Laws Ann., c. 41 (McKinney 1962), as it existed at the time of the administration of the estate herein, the shares of income to be received by the four trusts would not have been reduced as a result of the payment of the death taxes. It seems clear that defendant errs. In that case, the statute provided that "Unless otherwise expressly provided by the will of a person dying after this act takes effect, all income from real and personal property earned during the period of administration of the estate of such testator and not payable to others or otherwise disposed of by the will shall be distributed pro rata as income among the beneficiaries of any trusts created out of the residuary estate of such testator and the other persons entitled to such residuary estate." The court held that where, in accordance with the direction of the testator, payment of the death taxes was made out of the residuary estate, the net income earned by the estate during administration was to be divided pro rata among the income beneficiaries in proportion to the division of the residuary estate set up in the will before consideration of the effect of the tax payments. However, the court specifically pointed out that the will did not provide for the payment of the taxes prior to distributions to the beneficiaries or that the taxes were to be treated as administration expenses to be subtracted initially. Thus there was no provision in the will "otherwise expressly" providing differently from the Section 17–b formula. The court held that a general direction that death taxes be paid out of the residuary estate was not equivalent to a direction that the taxes be treated as administration expenses.

In the instant case, however, the will expressly provided (1) that an adjustment of the income should be made in the event simultaneous distribution of the residuary estate was not made to the beneficiaries, and (2) that the trusts' one-half share was to be calculated "after the deduction therefrom of" the death taxes, with the taxes to be considered as part of the estate's administration expenses.

11. In their fiduciary income tax return for 1955, in which they took a deduction of $826,758.68 for distributions to the five estate beneficiaries, the executors attached an explanatory statement setting forth the "allocations of shares of income and credits" to such beneficiaries which "may result" from the "[a]pplication of the formula for determining inclusions in gross income of beneficiaries prescribed in Section 662(b) of the Internal Revenue Code, if proper in this case * * *:"

12. It is felt by some that the present Section 662(a) provisions lead to inequitable results in certain situations, and proposals have been made which would reinstitute, at least to a limited extent, the prior "tracing" concepts and practices. See, Final Report of the Advisory Group on Subchapter J of the Internal Revenue Code of 1954, dated December 30, 1958, in Hearings on Advisory Group Recommendations on Subchapters C, J and K of the Internal Revenue Code before the House Committe on Ways and Means, 86th Cong., 1st Sess. 257, 286–92. Among the proposals of the Advisory

Plaintiff further contends that, even if Section 662(a) is applicable, its formula was erroneously applied because the death taxes should be included in the "amounts properly paid, credited, or required to be distributed to * * * beneficiaries." Crediting the trusts with such taxes as if they constituted distributions to the trusts would result in plaintiff and the trusts receiving equal total amounts. Accordingly, they would, under the statutory formula, be considered as having received equal amounts of the taxable distributable net income.

Plaintiff's basis for treating the payment of the death taxes as distributions to the trusts is based upon the provisions of Regulations § 1.662(a)–4 (26 C.F.R.) that "[a]ny amount which, pursuant to the terms of a will * * * is used in full or partial discharge or satisfaction of a legal obligation of any person is included in the gross income of such person under section 662(a) * * * (2) * * * as though directly distributed to him as a beneficiary, * * *." Since the taxes were not deductible from or payable out of plaintiff's one-half of the residuary estate, they therefore were, argues plaintiff, a charge upon, or obligation of, the remaining one-half passing to the trusts. As such an obligation, they should, plaintiff says, be considered, under the Regulations, as expenditures made on behalf of the trusts.

█ This contention too cannot be sustained. The death tax moneys never constituted a part of, nor were they ever incorporated in, the trusts. The will bequeathed one-half of the residuary estate to the trusts "*after* the deduction therefrom of all of the [death] taxes

* * *." (Emphasis supplied.) There is, therefore, no warrant for adding to the amounts paid to the trusts the amount of the death taxes, an amount which was never paid or payable to the trusts and which the trusts were, under the will, never to receive. Furthermore, these taxes were the legal obligations of the estate, and not of the trusts, the will specifically so recognizing and providing that such taxes, "payable by my estate * * * shall be paid * * * out of my estate as part of the expenses of administration thereof * * *." The taxes were a "charge" upon, or an "obligation" of, the trusts only in the loose sense that, in calculating the net amount of the residuary estate which the trusts were to receive, the amount of the taxes was to be deducted from the share left to the trusts. They were not a "legal obligation" of the trusts in the sense used by the regulation upon which plaintiff relies.

The trusts received $8,536,313.72 from the estate in 1955. It is such amount that is properly to be considered as the amount "properly paid, credited, or required to be distributed to" them under the statute. The $18,931,454.81 in death taxes paid during the year by the executors, described by the will as part of the administration expenses of the estate, were not "amounts properly paid, credited, or required to be distributed to * * beneficiaries" within the meaning of the statute or the regulation.

Finally, plaintiff contends that if Section 662(a), properly construed, does cover the instant situation, it is unconstitutional as applied to her because it would impose an unapportioned direct

Group was the exclusion from Section 662(a) of amounts properly paid, during the first three years of the estate, out of the corpus of the estate in full or partial satisfaction of a bequest. Effect would be given to a fiduciary's identification of the source of a distribution, as was permitted under the 1939 Code. During the hearings held in the course of consideration of proposed amendatory legislation, various examples were cited of alleged inequities under the 1954 Code provi-

sions, including one which, on the facts, was substantially identical with the instant case. 3 Hearings on Topics Pertaining to the General Revision of the Internal Revenue Code Before the House Committee on Ways and Means, 85th Cong., 2d Sess. 2801–2802. (The same factual situation is also discussed in Fillman, Selections From Subchapter J, 10 Tax Law Rev. 453, 471 (1955).) However, no such legislation has been enacted.

tax on principal or capital in violation of Article I of the Constitution. Section 2, clause 3 of the Article provides that direct taxes shall be apportioned among the several states according to their respective numbers, and section 9, clause 4 provides that no direct tax shall be laid unless in proportion to the census or enumeration directed by the Constitution to be taken. Plaintiff relies on the cases of *Pollock v. Farmers' Loan & Trust Co.*, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), and *Taft v. Bowers*, 278 U.S. 470, 49 S. Ct. 199, 73 L.Ed. 460 (1929), among others, for the proposition that a tax on principal or capital is a direct tax which must be apportioned among the states in proportion to the census.

Although Section 662(a)(2)(B) purports to be an income tax, nevertheless, plaintiff contends, the section, as here applied, actually imposes a tax on the principal or capital distributions received by plaintiff from the estate of her deceased husband. The Sixteenth Amendment, plaintiff points out, empowers only the levying of taxes "on *incomes * * * without apportionment among the several States, and without regard to any census or enumeration.*" (Emphasis supplied.)[13]

Additionally, plaintiff argues that Section 662(a)(2)(B) deprives her of property without due process of law because, although she actually received only 50 percent of the taxable income which the estate distributed to the beneficiaries in 1955, she has been taxed on an additional 26.2907 percent of such income. That part of the income, she says, was in fact received by the trusts and not by her, and to attempt to measure her tax by reference to the income of others, *i. e.*, the four trusts, would, she argues, conflict with the due process clause of the Fifth Amendment.[14]

In upholding constitutionality, defendant urges the broad proposition that, even though the disputed amount ($217,361) which taxpayer received in 1955 may have constituted corpus, still the challenged sections (as applied here) are valid on two alternative grounds, first, that the receipt of a bequest, devise or inheritance (whether or not it be from corpus) properly falls within the Sixteenth Amendment as "income" to the recipient, and, second, that in any event the sections impose an indirect tax upon the receipt of property which under the Constitution need not be apportioned. On either of these views, plaintiff's invocation of the Fifth Amendment would also fail because the taxpayer would clearly not be taxed on the income or property of others.

■ We do not have to delve into the difficult issues of large scope which the Government presents because, as we see it, there is a much narrower ground upon which to sustain the statute as applied to plaintiff's case. That more limited approach stresses the factor (which plaintiff underplays) that the executors did have a choice in 1955 whether to make the distributions in the form they did or, instead, so to manage distributions, to the extent governed by Section 662(a), that the several beneficiaries would not be taxable under Section 662(a) on more than their share of the estate's income. Plaintiff has failed to show that this could not be done.[14a] There was no legal compulsion, in the will or in New York law, to make the "balancing" distribu-

13. In addition to Section 662(a)(2)(B), plaintiff also attacks, for the same reasons, the constitutionality of that part of Section 102(b) which provides that any amount included in the gross income of a beneficiary under Subchapter J shall be treated as a gift, bequest, or inheritance of income from property, such gifts, bequests, or inheritances being, as hereinabove set forth, excluded from the provision of Section 102(a) that "Gross income does not include the value of prop-

erty acquired by gift, bequest, devise, or inheritance." See n. 5.

14. In support, plaintiff cites *Hoeper v. Tax Commission*, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931), and *Lewis v. White*, 56 F.2d 390 (D.Mass.), appeal dismissed, 61 F.2d 1046 (1st Cir. 1932).

14a. At the oral argument plaintiff's counsel admitted that this could be done, albeit with substantial trouble, under the will and the law.

tions of corpus and income which were made. That course was selected because the other would have been much more burdensome, requiring over the years complicated calculations of shares of income, earned either by principal or by undistributed income, which were due to the various residuary legatees. But the choice was not a forced one, and the other route could have been picked (though at the cost of more work and trouble).[15] If the application of Section 662(a)(2)(B) was deemed unfair to plaintiff taxwise, when such "balancing" distributions were made, the presumed inequity could be avoided by not making "balancing" distributions but employing the other methods of distribution which were available.

 That these other methods would have occasioned more trouble (and possibly some more expense) does not invalidate the statutory formula. As we have already indicated, Congress could properly assume, as it did, that in the generality of instances the formula would correspond to reality and not be unfair to any beneficiary. At least where an option is open to avoid an unfair and unrealistic result, use of the formula is not prohibited in the minority of instances in which it may be thought harsh or inequitable. In view of the broad Congressional power in taxation (*cf.* Fernandez v. Wiener, 326 U.S. 340, 351–353, 66 S.Ct. 178, 90 L.Ed. 116 (1945); A. Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 78 L.Ed. 1109 (1934)), Congress is not required by the Constitution to assure that the way of the option be just as easy as the way of the formula; added work and some added expense, if the option is selected, are permissible accompaniments of that choice. Taxation is not a field in which Congress must use a watchmaker's refinement and instruments, or a jeweler's

balance, to achieve precise equality in treatment.

The use of formulas which can be avoided if the taxpayer considers them unfair or not to reflect reality in his particular case is, of course, no stranger to the federal income tax system. The best-known is the standard formula for deductions on the individual income tax form; if the standard deduction is thought to be unfair or inadequate, the deductions can be itemized—sometimes at the cost of considerable extra work and some expense. Although the parallel is not exact (particularly since the standard deduction involves deductions, not income), the option available in plaintiff's case is roughly comparable to this common choice open each year to millions of individual taxpayers. We cite this example to show that formula solutions are not uncommon, and are invulnerable to attack where an escape-hatch is available if the formula proves unjust in a particular instance.

It may be said that Mrs. Harkness, the taxpayer, did not have or make the choice here—the executors did. Technically that is the situation, but there is no hint that plaintiff objected in any way to the estate's course of action, or suggested the other course, or was compelled to accept the large distributions of principal in 1955. It is unrealistic to suppose that, if she had objected on the ground that the estate's mode of distribution increased her own taxes, the executors would nevertheless have forced her to accept those large payments. Indeed, there is no reason to believe that under the will the executors could lawfully compel her to accept the large corpus distributions in 1955, if she was unwilling to do so because of the tax consequences to her.[16] Plaintiff's reply brief to the court makes it clear that plaintiff was not so compelled, and suggests that a

---

15. It is absolutely plain on this record that the executors deliberately chose to make the distributions in the form they did, and that they were under no compulsion of law. Taxpayer so concedes. See also *infra.*

16. Article ELEVENTH of the will would not seem to contemplate such a forced distribution of principal.

deliberate chance was taken as to how the law would be applied. The brief indicates that the executors (and probably plaintiff's own counsel) believed that § 662(a)(2)(B) should not be interpreted (in this type of case) as the Internal Revenue Service and we have construed it—and they acted accordingly.[17]

Without intimating in any way that the statute would be invalid if applied where there was no such option as in this case, we hold that the existence of the choice removes whatever defect there might otherwise be. At least where the option is present, Congress can reasonably and validly forbid "tracing" and presume that its formula in § 662(a)(2)(B) gives an accurate reflection of the division of the estate's "distributable net income" among the beneficiaries. *Cf. Smith v. Westover,* 191 F.2d 1003 (9th Cir. 1951), aff'g 89 F.Supp. 432 (S.D. Cal.1950). Normally, use of the formula would be fair and accurate enough. If discretionary "balancing" payments which include large amounts of corpus are made and accepted, as here, the necessary consequence is to invoke the formula nonetheless, and the taxpayer will not be allowed to "trace" in order to show that the source of part of his receipts was in fact not "distributable net income" but corpus. If the tax consequences of this approach are deemed sufficiently undesirable, there is the other route which can and should be taken. In these circumstances, there is no compulsion to accept an unfair or unrealistic division of "distributable net income."

For these reasons, we hold that the tax was lawfully imposed and that plaintiff is not entitled to recover.

SKELTON, Judge (dissenting):

I respectfully dissent. In my opinion, the majority opinion by failing to hold that Section 662(a)(2)(B) of the Internal Revenue Code of 1954 (26 U.S.C. § 662(a)(2)(B) (1958)) and the re-

lated Treasury Regulations 1.662(a)–3 are unconstitutional and invalid, has placed a stamp of approval upon the acts of the Internal Revenue Service in collecting income taxes from the plaintiff that she did not owe and in exempting the trusts from income taxes that they owed. This has caused an unconscionable result to be reached in this case.

Regardless of the elaborate and complicated provisions of the statute and regulations and the involved and sophisticated reasoning of the government, we end up with the following undisputed facts:

1. The plaintiff has been required to pay income taxes on $217,361 of the income of the decedent's estate that she never received.

2. The trusts were exempted from the payment of income taxes on the $217,361 income of the estate which they received and which taxes they owed.

3. The tax on the $217,361 was levied upon the property of the plaintiff and collected from her under the guise of an income tax, but was actually a direct tax on the corpus of the decedent's estate that she inherited from him (her husband) under the terms of his will.

4. The direct taxes levied upon and collected from the corpus of the decedent's estate received by the plaintiff was not a tax that had been apportioned among the several states according to their respective numbers and in proportion to their population as required by the United States Constitution.

5. All indirect taxes (estate and inheritance taxes) had already been paid on the transfer of decedent's estate ($14,500,000 Federal and $4,300,000 to the State of New York).

With these well-established and admitted facts in mind, I will proceed to show that the statute and related regulations, as well as the acts of the Internal Revenue Service, were unconstitutional and invalid, which is the main

17. The 1954 Internal Revenue Code, which first contained § 662(a)(2)(B), became law on August 16, 1954, and the first full calendar year of its effectiveness was 1955, the year involved here.

thrust of plaintiff's appeal. The majority chose to sidestep this question and refused to decide it. Instead, they decided the case on the narrow basis that the executors of the estate had an option to distribute the corpus and income as they did which resulted in the tax on plaintiff, or to effect distribution a different way without such resulting tax on plaintiff. There is no showing that plaintiff had any control over the executors or that she had anything whatever to do with what they did. It seems unjust to me to place a beneficiary of an estate in a position of owing or not owing an income tax according to the whim and actions of the executors of the estate. It also appears that this is an unrealistic solution of the problem because ordinarily a person either owes an income tax or he does not owe it according to law and not according to what someone else over whom he has no control does with respect to his property. The court cites Smith v. Westover, 191 F.2d 1003 (9th Cir. 1951), aff'g 89 F.Supp. 432 (S.D.Cal.1950). That case does not appear to be applicable because it involved the division of trust income for income tax purposes between a trust and a *beneficiary of a trust*. Whereas, here we are concerned with a formula to allocate estate income *among various estate beneficiaries* for income tax purposes. Furthermore, in that case, there was an attempt at tax avoidance when the testator tried in his will to convert income to principal by saying such income was principal. None of these facts are present here. Also, the statute in that case did not involve the allocation formula that we have here. The cases are clearly distinguishable.

In my opinion, the court should have decided the constitutional question instead of avoiding it. When it appears that a provision of the Internal Revenue Code is clearly contrary to the Constitution, it is the duty of a court to declare it unconstitutional. Nicol v. Ames,

173 U.S. 509, 515, 19 S.Ct. 522, 43 L.Ed. 786 (1899). I cannot accept the solution of the majority of the problem involved because it avoids the constitutional questions that should decide the case. All that the majority really decides is that the government wins and the plaintiff loses.

The statute and related regulations involved in this case are contrary to and violate Article I (Section 2, Clause 3) (Section 8, Clause 1) (Section 9, Clause 4), and the Fifth and Sixteenth Amendments of the United States Constitution, as will be clearly shown below.

*Section 662(a)(2)(B) and Related Treasury Regulations Violated the Fifth Amendment by Depriving Plaintiff of Property Without Due Process of Law*

The relationship of the Fifth Amendment of the Constitution will be considered first because its violation by the statute and regulations is so clearly apparent and obvious. The tax collected from plaintiff was collected as an income tax in connection with her income tax returns. Section 662(a)(2)(B) is an income tax statute and is found in the income tax section of the Code (subchapter J of Subtitle A) and was used by the District Director in taxing plaintiff on the $217,361 income of the estate that she never received. He simply added that amount to her gross income. There was no doubt that the IRS considered the tax exacted of the plaintiff to be a tax on income at the time it was collected. In fact, when the case was before our trial judge, the defendant so contended by saying in its brief presented to him:

\* \* \* [I]t is quite clear that Section 662(a) has not imposed a tax upon a distribution of corpus of the estate, but rather *the tax has been imposed on the income of the estate.* [Emphasis supplied.] [*Id.* at 29.] [1]

---

[1]. As will be discussed later, defendant now admits the tax was upon the *corpus* and not on *income.*

In fact, the tax exacted of plaintiff was figured and calculated according to the rates applicable to income taxes.

On appeal before us the defendant admits in its brief that plaintiff never received the $217,361 of estate income on which she was taxed when it stated:

> * * * [T]axpayer repeatedly states * * * she was entitled to income from only one-half of the corpus of the estate, that *she received only this portion* of the estate's income, * * *. *The Government here concedes these facts.* [Emphasis supplied.] [*Id.* at 15.] [2]

Having conceded that plaintiff did not receive the $217,361 on which she paid an income tax, the act of the government in taxing her on such income flies squarely in the face of the Fifth Amendment as the taking of property without due process of law.

The cases are legion that prohibit the taking of one's property without due process of law. It hardly seems necessary to cite any of such authorities here because the case is so plain and conclusive that such a taking occurred in this case. Simply stated, plaintiff's property was taken for an income tax on income she did not receive and applied to the payment of the income tax owed by the trusts which received the income but who were not required to pay the tax. This appears to be a *classic example* of the taking of one's property without due process of law. This amounts to a confiscation of plaintiff's property and is forbidden by the Fifth Amendment to the Constitution. *See also,* Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184 (1927); Hoeper v. Tax Comm'n of Wisconsin, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931) (decided under the Fourteenth Amendment, but Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772 (1932) and Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562 (1931) hold that legislative restraint imposed by the due process clause of the Fifth and Fourteenth Amendments is the same). *See also,* Lewis v. White, 56 F.2d 390, 391 (D.Mass.1932), appeal dismissed, 61 F. 2d 1046 (1st Cir. 1932); and A. Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 78 L.Ed. 1109 (1934).

*Section 662(a)(2)(B) and Related Treasury Regulations Violate Article I of the Constitution*

The government now says in its brief in this court that the tax imposed on plaintiff on the $217,361 of income of the estate was a tax upon the *corpus* of the estate distributed to the plaintiff. In this connection, it says:

> * * * [T]he allocation of distributable net income is a measure of a tax upon all distributions *including distributions of corpus.* [Emphasis supplied.] [*Id.* at 38.]

In conceding that the tax imposed on plaintiff was a tax on corpus or principal, the defendant runs afoul of Article I of the Constitution by imposing on plaintiff an unapportioned direct tax on principal or capital.

Article I, Section 2, clause 3, provides in part:

> * * * [D]irect Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, * * *.

Article I, Section 8, clause 1, provides:

> The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

Article I, Section 9, clause 4, provides:

> No Capitation, or other direct, Tax shall be laid, unless in Proportion to

2. The $217,361 on which plaintiff was taxed was not a portion of the one-half of the income plaintiff received, but was a portion of the one-half the trusts received.

the Census or Enumeration herein before directed to be taken. [Footnote omitted.]

The Supreme Court held in the early case of Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, 634, 637, 15 S.Ct. 912, 39 L.Ed. 1108 (1895), that a tax on capital or principal is a *direct tax* which must be apportioned among the states in proportion to the population as shown by the census, because of the requirements of the above provisions of Article I.

A direct tax on corpus or principal without such apportionment is unconstitutional, and this cannot be avoided by merely calling it a tax on income. *See* Richardson v. United States, 294 F. 2d 593, 596 (6th Cir. 1961), cert. denied, 369 U.S. 802, 82 S.Ct. 640, 7 L.Ed.2d 549 (1962); Commissioner v. Obear-Nester Glass Co., 217 F.2d 56, 58 (7th Cir. 1954), cert. denied, 348 U.S. 982, 75 S. Ct. 570, 99 L.Ed. 764 (1955), rehearing denied, 349 U.S. 948, 75 S.Ct. 870, 99 L. Ed. 1274.

The defendant makes no claim or pretense that the tax imposed on plaintiff as a direct tax on principal or capital had been uniformly apportioned among the states according to the census as required by Article I of the Constitution. Accordingly, Section 662(a)(2)(B) and related regulations are unconstitutional and the levying and collection of such taxes from the plaintiff was invalid. In further support of this proposition, it should be pointed out that it is the universal practice of the IRS in all of the states not to tax beneficiaries of estates on the corpus of such estates when received by them where there has been no income earned by the estate, but in the case before us a beneficiary has been taxed on the corpus of an estate which she received pursuant to the terms of her husband's will. This has been done despite the requirement of Article I, Section 8, clause 1, that provides in part:

\* \* \* [A]ll Duties, Imposts and Excises *shall be uniform throughout the United States;* [Emphasis supplied.]

*Section 662(a)(2)(B) and Related Treasury Regulations Violate the Sixteenth 'Amendment to the Constitution*

The defendant makes the further argument that even if the tax imposed on the plaintiff is a direct tax on the corpus or principal that she received to the extent of a tax on the $217,361, nevertheless, it is a legal tax because such corpus or principal that she received is *income* and taxable. This is indeed a novel and unreasonable contention. Here again defendant's argument is contrary to another provision of the Constitution, namely, the Sixteenth Amendment.

Prior to the adoption of the Sixteenth Amendment, the Supreme Court held in Pollock v. Farmers' Loan & Trust Co., *supra,* that Congress did not have the power to impose an income tax. In that case the Court held invalid the Act of August 15, 1894 [August 27, 1894], c. 349, § 28, 28 Stat. 509, 553, which included in income subject to tax of "money and the value of all personal property acquired by gift or inheritance." The Sixteenth Amendment was adopted in 1913. The very first income tax law enacted by Congress after the adoption of the Amendment, provided that the value of property acquired by "gift, bequest, devise or descent" was excluded from net income. Act of 1913, c. 16, § IIB, 38 Stat. 114, 167. The same exclusions have existed ever since. For instance, Section 102 of the Internal Revenue Code of 1954 provides:

§ 102. Gifts and inheritances.

(a) General rule.—

Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance. [26 U.S.C. § 102 (1954)]

The attempt of defendant to include the inheritance (corpus or principal) of the plaintiff in her gross income is directly contrary to such section of the Code. The defendant seeks to avoid this provision of Section 102(a) by pointing to

Section 102(b) (2), added in 1954, which provides in part:

(b) Income.—

Subsection (a) shall not exclude from gross income—

\* \* \* \* \* \*

(2) where the gift, bequest, devise, or inheritance is of income from property, the amount of such income.

\* \* \* Any amount included in the *gross income* of a beneficiary under subchapter J shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property. [Emphasis supplied.]

The defendant relies especially on the last paragraph quoted above by arguing that since the corpus of the estate was included by the IRS in the gross income of the plaintiff, at least to the extent of the $217,361, such corpus to that extent became *income*. I do not agree. The above section of the Code refers to gross income. As will be pointed out below, income is income and not corpus. Income is completely separate and distinct from principal, corpus, or capital. Even if Congress intended the section to have the meaning defendant attributes to it, Congress had no power to convert corpus into income by merely calling it income. I do not think that Congress intended any such meaning. The section refers to income and not to corpus or principal. If it does mean corpus or principal, then it is unconstitutional as a direct unapportioned tax on principal or capital. Furthermore, it violates the Sixteenth Amendment to the Constitution which authorizes an income tax *only on income*.

The Sixteenth Amendment did not define "income," but as has been pointed out by the courts, the term had a well-defined meaning at the time the Amendment was adopted. This meaning was separate, apart, and different from capital, corpus, or principal. In Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), Mr. Justice Holmes stated:

\* \* \* I think that the word "incomes" in the Sixteenth Amendment should be read in "a sense most obvious to the common understanding at the time of its adoption." \* \* \* [*Id*. at 219–220, 40 S.Ct. at 197.]

In United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500 (1936), Mr. Justice Cardozo said:

Income within the meaning of the Sixteenth Amendment is the fruit that is born of capital, not the potency of fruition. With few exceptions, if any, it is income as the word is known in the common speech of men. [*Id*. at 99, 56 S.Ct. at 358.]

It is clear that when the Sixteenth Amendment was adopted, the term "income" had a well-defined meaning that was distinguished from principal or capital.

The Supreme Court has held that the meaning of the Sixteenth Amendment cannot "be extended beyond the meaning clearly indicated by the language used." James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). In that case, Mr. Justice Whittaker said:

\* \* \* Equally well settled is the principle that the Sixteenth Amendment "is to be taken as written and is not to be extended beyond the meaning clearly indicated by the language used." Edwards v. Cuba R. Co., 268 U.S. 628, 631, 45 S.Ct. 614, 69 L.Ed. 1124.[1] \* \* \*

---

1. "A proper regard for its genesis, as well as its very clear language, requires also that [the Sixteenth] Amendment shall not be extended by loose construction. . . . Congress cannot by any definition [of income] it may adopt conclude the matter, since it cannot by legislation alter the Constitution, from which alone it derives its power to legislate, and within whose limitations alone that power can be lawfully exercised." Eisner v. Macomber, 252 U.S. 189, 206, 40 S.Ct. 189, 64 L.Ed. 521. [*Id*. at 248, 81 S.Ct. at 193.]

The Sixteenth Amendment authorized Congress to lay and collect taxes on incomes. As shown by the above deci-

sions, income was not and is not the same as principal or capital. Consequently, the attempt of defendant in this case to convert principal or corpus of the estate of the deceased into income of the plaintiff is clearly contrary to the Sixteenth Amendment and to Section 102 of the Internal Revenue Code of 1954.

### The Tax Imposed on Plaintiff is not an Indirect Tax on the Receipt of Property that need not be Apportioned

Defendant makes one last argument which in my opinion has no validity and is completely unrealistic. It argues that in any event the tax imposed on plaintiff is an *indirect tax on the receipt of property* and it need not be apportioned. This appears to be an exercise in semantics. It is just another way of describing a tax on the transfer of property. An indirect tax is a tax imposed on the *transfer* of property. The estate or inheritance tax is a good example. The receipt of the corpus of an estate by a beneficiary is an integral part of the transfer of such corpus from the estate. The transfer (estate) taxes had already been paid on the estate of the decedent in the total sum of $18,800,000 before the tax involved here was collected from the plaintiff. If carried to its logical conclusion, defendant's argument would lead to double taxation on the transfer of the estate. There is no authority in law that authorizes the government to impose any kind of tax, direct or indirect, on the *receipt* of the corpus of an estate by a beneficiary without apportionment as required by Article I of the Constitution. The argument of defendant to the contrary is purely theoretical and without support in the Constitution, the Internal Revenue Code, or the decisions of the courts.

Defendant's theory of an indirect tax on the receipt of property would have one of two results, namely (1) a double tax on the transfer of property, or (2) a tax on the ownership of property, which is a direct tax on the principal or corpus and is invalid unless apportioned as required by the Constitution.

Furthermore, Section 1(a) of the Internal Revenue Code of 1954 imposes a tax *"on the taxable income"* of every individual. It does not impose a tax on the *transfer* or *receipt* of property. The tax here was imposed on the $217,361 included in plaintiff's *taxable income*.

### Conclusion

The defendant argues that Congress enacted Section 662(a)(2)(B) in order to eliminate the necessity of "tracing" the source of distributed property and to facilitate bookkeeping and auditing by executors and the IRS. Even though this may be a laudable intent, such purpose does not allow the Congress to circumvent or override the provisions of the Constitution. The Constitution is the source of the powers of the Congress and it defines the boundaries within which Congress can function. In the case before us, Congress has exceeded its powers and gone beyond the boundaries established for its operation by the Constitution. There can be no doubt that there is a limitation on the taxing power conferred upon Congress by the Constitution. When the enforcement and application of a taxing statute is so arbitrary as to amount to the confiscation of a taxpayer's property, as is the case here, both the statute and the action should be held to be unconstitutional and invalid. *See* Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) and Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932).

The majority opinion states:

* * * [T]he taxpayer will not be allowed to "trace" in order to show that the source of part of his receipts was in fact not "distributable net income" but corpus.

This is directly contrary to the decision of the Supreme Court in Heiner v. Donnan, *supra*, when the court said in commenting upon the statute, involved

in Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926):

\* \* \* a statute which imposes a tax upon an assumption of fact *which the taxpayer is forbidden to controvert is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.* [Emphasis supplied.] [*Id.* at 325, 52 S.Ct. at 361.]

The court stated further in that case:

Nor is it material that the Fourteenth Amendment was involved in the *Schlesinger* Case, instead of the Fifth Amendment, as here. The restraint imposed upon legislation by the due process clauses of the two amendments is the same. Coolidge v. Long, 282 U.S. 582, 596, 51 S.Ct. 306, 75 L.Ed. 562. That a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment is settled. Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184; Brushaber v. Union Pac. R. Co., 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493; Tyler v. United States, *supra*, 281 U.S. [497], p. 504, 50 S.Ct. 356, 74 L.Ed. 991. [*Id.* at 326, 52 S.Ct. at 361.]

It appears that the majority opinion, contrary to the above decision of the Supreme Court, is upholding a statute which "assumes as a fact which the taxpayer is forbidden to controvert" that the $217,361 was "income" and not "corpus." The statute, given this meaning, clearly violates the due process clause of the Fifth Amendment to the Constitution.[3]

The majority opinion holds, in effect, that Section 662(a)(2)(B) creates a *conclusive* presumption that distributions subject to the operation of that section are distributions of *income*, and consequently cannot be rebutted by the taxpayer. We held otherwise in the case of Mott v. United States, 462 F.2d 512, 199 Ct.Cl. —— (1972) when we ruled that such a presumption was not conclusive with respect to charitable distributions, and we held that tracing should be allowed to show that the distributions were from corpus and not from income. It is of particular significance that the government in that case argued that such tracing should be allowed, notwithstanding the statute, in order to defeat a charitable deduction, which is exactly contrary to the position it takes in the present case. We agreed with the government in that case that tracing should be allowed in order to prevent injustice and inequity toward the government. Here, equity and justice is on the side of the taxpayer, especially since it is conceded that there was no manipulation of the distribution by the executors to avoid taxes. Yet the majority refuses to make an exception for the taxpayer in this case as we did for the government in the *Mott* case. As tracing was allowed as an exception in that case, it should be allowed here, although admittedly the facts are different.

Since the majority refuses to face the constitutional issue, an equitable solution of the whole problem would be to interpret the statute in such a way as to hold that it creates a rebuttable presumption that such distributions as we have here are from income, which may be overcome by evidence of the taxpayer.[4] On that basis, the plaintiff would prevail in this case because it is admitted by the government that the distribu-

---

3. See George Craven, Taxation of Estate and Trust Income Under the 1954 Code, 103 Univ. of Pa.L.Rev., 602, 614 (1954–1955), where it is stated: " \* \* \* There is a serious question about the constitutionality of an income tax statute which taxes to a beneficiary receiving principal an amount of income in excess of an amount which may inure to his benefit. This provision requires prompt remedial action by Congress in order to eliminate any requirement that amounts of principal distributed by an estate in process of administration shall be treated as distributions of income."

4. This would be similar to the practice in tax cases of allowing a taxpayer to overcome the presumption of correctness of a determination by the Commissioner of Internal Revenue Service with reference to income taxes.

tion of $217,361 to the plaintiff on which she was taxed was to that extent corpus and not income of the estate received by plaintiff during the taxable year in question. Such an interpretation of the statute would remove the constitutional question from the case.

A solution to this whole problem would be for Congress to amend Section 663(c) of the Internal Revenue Code so as to make it apply to estates. As now written, it only applies to trusts and is known as the "separate share" rule. In other words, where a trust has more than one beneficiary, the separate shares of the beneficiaries are treated as separate trusts. This "prevents a beneficiary who receives corpus from being taxed on an amount in excess of the distributable net income of the trust of his share. If the separate share rule were extended to estates, the problem we have in the present case would not arise.[5] There is no logical reason why Section 663(c) should not apply to estates as well as to trusts. This was no doubt an oversight when the statute was drafted.

When the facts and the arguments of the parties are carefully considered and one arrives at the moment of decision in this case, it is clear that the IRS either taxed the plaintiff on the $217,361 of the income of the estate that she did not receive, or it levied and collected such tax on the corpus of the estate which she did receive under the guise of an income tax. In either case, the tax was unconstitutional and invalid.

For all of the foregoing reasons, I would hold that Section 662(a)(2)(B) and Section 1.662(a)-3 of the Treasury Regulations as applied to plaintiff in this case are unconstitutional and the collection of the tax from the plaintiff was invalid. Alternatively, I would hold that the statute and the regulations create a rebuttable presumption that distributions such as we have here are from income which might be overcome by the taxpayer by credible evidence, and that the taxpayer has overcome such presumption in this case. In either case, I would enter judgment for the plaintiff for the sum of $248,256.75, plus interest from the date of payment as authorized by law.

5. For a discussion of the separate share rule, see George Craven, Taxation of Estate and Trust Income Under the 1954 Code, *supra*, at 616; and Kamin, Surrey & Warren, The Internal Revenue Code of 1954, Trusts, Estates and Beneficiaries, 54 Colum.L.Rev. 1237, 1257-59 (1954).